# RASCO & BRANTLEY v. WILLIS.

1. In the hiring of slaves there is an implied stipulation that the slave is to be employed in some honest pursuit, and if the hirer should incite or compel the slave to steal, or become the receiver of stolen goods, the owner would have the right to rescind the contract, and resume the possession of his slave.

2. In such a case the hirer would be responsible only for the actual value of the services rendered by the slave, estimated by the contract previously made.

3. Evidence that the defendants kept a small grog-shop, about which negroes resorted, with other circumstances conducing to show that an unlawful traffic was carried on by them with slaves, by receiving from them stolen goods, is not proper to go to the jury, to prove that the defendants, and other persons with their permission, incited the slave of the plaintiff to steal, or employed him as an instrument in their unlawful traffic, without further proof, in some way connecting the slave of the plaintiff with these unlawful acts.

ERROR to the Circuit Court of Dallas.

This was an action commenced before a justice of the peace, on a note of the plaintiffs in error, under fifty dollars ; and judg-

ment being rendered in favor of the defendant in error, an appeal was prosecuted to the Circuit Court.

Upon the trial of the cause in the Circuit Court, it appeared in evidence that the note sued on, with several others, was given by the plaintiff in error, Brantley, for the hire of a negro man slave, for one year from the first of January, 1841 to the first of January, 1842. That the slave went into the possession of Brantley at the time of hiring and continued in his possession until the 13th of November, 1841, when the plaintiff with five or six other persons, came to the house of Brantley, and took the slave from him without his consent. The plaintiff proved that he had entered a credit on one of the notes for twenty dollars, for the unexpired term of the hiring, but it was without the knowledge or consent of Brantley.

The plaintiff then offered to prove, as a justification for taking away the negro, that Brantley was employing him to steal property, or that his father and brother were doing so, with his consent; to which the defendant objected; but the Court permitted the proof to be made.

The plaintiff then proved what business the defendant and the other Brantleys carried on together, and that it was a poorly furnished grog shop, about which negroes resorted, with other circumstances, conducing to show that an unlawful traffic with slaves was carried on; and other circumstances tending to show that the Brantleys were in the habit of receiving stolen goods from negroes, knowing them to be stolen, and that these circumstances had been detailed to the plaintiff with advice to take the negro away. This testimony was objected to by the defendant; but the Court permitted it to go to the jury.

The Court then charged, that if the defendant, or others with his consent, employed the slave to steal goods, or in receiving or bringing stolen goods to them, it furnished a sufficient legal excuse to the plaintiff to terminate the contract, and take the slave, and recover in this action for the time the defendant had the slave in his possession. To all which the defendant excepted, and now assigns for error the matters of law arising out of the bill of exceptions.

EVANS, for plaintiff in error—Contended that the contract was entire, and that the contract of hiring was a sale of the services of

the slave for one year, and as the slave was taken away before the expiration of the year, without the defendant's consent, there could be no recovery. [3 Ala. Rep. 440.] That the plaintiff was sufficiently protected from any injury to his slave, by the criminal law.

EDWARDS, *contra*—Insisted that the contract contained implied stipulations, as well as express. That employing the negro to steal, was not only impairing his morals, and thereby his value to his owner, but was also putting his life in peril. That this was a violation of his contract, and put an end to it, and the master had then a right to resume possession of the slave.

He also maintained, that as there was a written promise to pay the consideration, that the covenants between the parties were independent, and that the plaintiff might recover the whole hire, and leave the defendant to his cross action. He cited 9th Porter, 74.

ORMOND, J.—The counsel for the plaintiff in error contends, that as the contract for the hire of the slave was entire, and was put an end to by the defendant in error without his consent, there can be no recovery even for the services rendered by the slave.

The general rule is certainly as stated, but it is equally as clear, that in all contracts of this description, there are certain implied stipulations, the violation of which will authorize a rescision of the contract. When a slave is hired, it must be implied that he is to be employed in some honest pursuit, and if the hirer should incite him to steal, or compel him to become the receiver of stolen goods, it cannot be doubted that the owner would be authorized to rescind the contract of hiring. The injury to the morals of the slave by thus becoming familiarized to the commission of crime, would not only impair his value as property, but in its consequences might lead to the loss of his life.

It is no answer to this view of the case, that for any injury to the slave, the hirer could be compelled to respond in damages; he might not be able to satisfy the judgment; and besides, it would be difficult, if not impossible, to admeasure by damages, the amount of injury inflicted on the owner, by debauching the morals of his slave. If, in the downward career of vice, in its progress from the commission of one crime to that of another of deeper dye, the slave should finally be guilty of an act which would forfeit his life, it would be impossible to trace the consummation of his guilt to

Rasco & Brantley v. Willis.

his initiation in crime, by the defendant. For injury of this kind, therefore, in the very nature of the thing, there could be no adequate redress by action, and we are therefore of opinion, that it would justify the owner in rescinding the contract, after which period his right to hire for the services of the slave, would of course cease, and the hirer become responsible only for the actual value of the services rendered, estimated by the contract entered into.

The next enquiry is, whether the evidence objected to by the plaintiff in error was properly admitted. It was in substance, that the Brantleys kept a small grog shop, about which negroes resorted, with other circumstances, conducing to show that an unlawful traffic with slaves was carried on by them, and also that they were in the habit of receiving stolen goods, knowing them to be stolen.

The facts which the plaintiff undertook to establish as a justification for his rescision of the contract, were that the defendant, and other persons with his permission, incited the slave to steal, and employed him as an instrument in their unlawful traffic of receiving stolen goods, The circumstances in proof may have tended to the conclusion, that the Brantleys carried on this unlawful traffic with slaves, but there is no evidence which in any manner connects the slave of the plaintiff with these transactions. A suspicion might indeed be indulged in, that a person who would trade with one slave unlawfully, would also with another; but the inference which appears to have been drawn in this case, is more violent than this : it is, that a person who would purchase stolen goods from negroes generally, would employ a particular slave as his instrument in the commission of the crime ; and not only this, but that he would incite, or in the language of the bill of exceptions, employ him to steal.

As the facts offerred in evidence did not tend to prove the issue, but by violent and strained presumptions, which the proof did not legitimately warrant, it follows that the facts in proof were too remote and irrelevant to the issue between the parties to have been permitted to go in evidence to the jury, without some further proof, in some way connecting the slave of the plaintiff with these unlawful acts of the defendants, and could only tend to prejudice and mislead the jury.

For this error the judgment must be reversed, and the cause remanded. 6