BRACKENRIDGE and Others *v.* DAWSON.

Lands of an infant were sold in pursuance of a decree of the Circuit Court. The record showed that process was ordered against the infants, and that, at the following term, a guardian *ad litem* was appointed. *Held,* that it must be presumed, in a collateral proceeding, that they were regularly brought into Court.

In a proceeding in chancery for partition, trustees were appointed to make sale of the land. *A.,* one of the trustees, having himself purchased a part, induced *B.* to have his name inserted in the certificate as the purchaser, as a means of transmitting the title to *A.* Afterwards *B.* assigned the certificate to *A.,* who, it seemed from the evidence, had paid the first instalment of the purchase-money, and the taxes. The certificate given by the trustees to *B.,* stipulated that on payment, &c., they or their successors would convey the land, by deed in fee, with covenant of general warranty; but it also showed that they were acting under the authority of the Court, and that the sale was subject to confirmation. It did not appear that any fraud had been practised on *B.* The wives of certain of the defendants whose interests in the land had been sold, had an inchoate dower therein when the sale was made, but they had released it to the trustees, in order to perfect the title, before this suit, which was by *B.,* for rescission, &c., was brought, and before the purchase-money had been paid.

*Held,* that *B.* could not allege, as a ground of rescission, that the purchase by *A.,* he being a trustee, was invalid.

*Held,* also, that the stipulation concerning the covenant of warranty, if not wholly void, amounted to nothing more than a personal undertaking on the part of the trustees, and did not affect the validity of the sales, nor bind their successors to make warranty deeds.

*Held,* also, that *B.,* after the assignment of the certificate, had no such interest as could entitle him to maintain a bill for rescission.

*Held,* also, that *B.* had no claim to recover said instalment of purchase-money and taxes paid.

Where the parties to a contract are in *pari delicto,* unless there are circumstances giving to one a superior equity, he can not call for a dissolution of the contract, at least until he has offered to perform it on his part.

There are many cases in which a rescission will not be decreed, although a specific performance would also be refused.

APPEAL from the *Allen* Circuit Court.

GOOKINS, J.—This was a bill in chancery filed by *Dawson,* the purchaser, to obtain a rescission of a contract for the purchase of real estate.

Previous to 1836, one *Alexander Ewing* was the owner of a tract of land adjoining the town of *Fort-Wayne,* of which he died seized, leaving several heirs, who, in that year, proceeded to have partition made of the tract by

May Term,
1856.

BRACKEN-
RIDGE
v.
DAWSON.

a suit in chancery in the *Allen* Circuit Court, in which some of the heirs were complainants, and others, of whom some were infants, were defendants. The commissioners appointed to make partition reported that the tract was not susceptible of division without injury to the owners. Whereupon the Circuit Court appointed *John Spencer* and *Samuel Edsall* trustees, and directed them to lay off said tract as an addition to the town of *Fort-Wayne*, and to sell the lots on certain prescribed terms, and to report their proceedings to said Court. That cause was afterwards certified into this Court, in consequence of the interest of *Charles W. Ewing*, one of the parties, who was president judge of the *Allen* Circuit Court, and is still pending in this Court.

Pursuant to the order of the *Allen* Circuit Court, the trustees, *Spencer* and *Edsall*, on the 17th of *October*, 1836, sold a large number of said lots at auction. *Spencer*, at that sale, purchased six lots, which are the subject of this suit. To give proper form to the transaction, the name of *Spencer* was erased from the list of purchasers, and that of *Dawson*, the plaintiff, inserted in lieu of it. Certificates were executed by the trustees to *Dawson*, reciting the terms of the sale, which were one-fifth of the purchase-money in hand, and the residue in two yearly payments, entitling him to a conveyance on confirmation of the sales by the Court and full payment of the purchase-money, by deeds with covenant of warranty. *Dawson* executed his notes for the deferred payments, and on the 7th of *September*, 1837, *Spencer* and *Edsall* reported the sales to this Court, and they were confirmed.

With their report they resigned the trust, and other trustees were appointed in their stead from time to time, until *July*, 1842, when *Brackenridge* and *McCulloch*, the trustees made defendants to this bill, were appointed.

The present bill was filed in *October*, 1844. The acting trustees, *Spencer* and the heirs of *Alexander Ewing*, are made defendants. The trustees answered, simply averring their appointment and authority to act. *William G. Ewing* answered the bill in full, and formal answers were put in

for the infants. *Spencer*, and several adult heirs of *Alexander Ewing* failed to answer, and the bill as to them was taken as confessed.

The Circuit Court decreed a rescission of the contract of sale, and the repayment to the plaintiff of the first instalment of one-fifth of the purchase-money, with interest, and a sum paid for taxes; amounting in all to 793 dollars and 48 cents.

The record is voluminous, and the action of the Circuit Court is not in all cases easy to be understood. Without attempting an abstract in full, which would be necessarily prolix, we shall be able, from the foregoing outline, to state the positions assumed by the parties, and our conclusions.

The two questions which arise upon this record, are, 1. Whether the plaintiff was entitled to a rescission of the contract; and, 2. Whether he was entitled to the decree which he obtained for money.

In support of the right to rescind, the first ground taken is, that in the proceedings for partition, certain infant defendants were not served with process; and that the proceedings as to them were void. No proof was offered in this case as to whether the infants were or were not served with process, or whether they were or were not in Court when the guardian *ad litem* was appointed for them, except what is shown by the record in partition. That record shows that process was ordered against them, and that at the following term a guardian *ad litem* was appointed. As nothing further appears, the presumption is, the proceedings being attacked collaterally, that they were regularly brought into Court. *Doe* v. *Brown*, 8 Blackf. 443.—*Thompson* v. *Doe*, *id.* 336. In the case of *Doe* v. *Anderson*, 5 Ind. R. 33, the agreed case admitted that the defendants were not served with process; had no notice of the proceedings; and were not in Court during their pendency. It is not the province of this Court to disregard evidence which the parties have voluntarily placed upon the record; and these admissions showed that the Court had no jurisdiction of the persons sought to be charged. Had the question arisen upon a record which was silent

upon the subject, unaided by such admissions, a different result would have ensued.

Another position assumed is, that *Dawson* was not the purchaser; but that he was merely the medium through whom the title was to be transmitted to *Spencer*, the trustee. This allegation is sustained by the proof; but we do not see upon what principle *Dawson* can rely upon it as a ground of rescission. He assumed that position voluntarily, and the bill on this point contains the remarkable statement, that the plaintiff, at the time he yielded to the persuasions of *Spencer* and *William G. Ewing*, and consented to become the medium through which the legal title might be transferred from said heirs to said *Spencer*, was well satisfied that the transaction in that behalf was totally illegal. If *William G. Ewing* were the only party to be affected by the rescission, there might be more plausibility in the claim, but there are others to be affected by it, some of them infants. They might complain of the transaction, and treat all the parties to it, the plaintiff included, as their trustees; but that will afford him no pretext for applying to a Court of equity for relief from a liability thus voluntarily incurred, when fully advised of the consequences.

Another ground assumed for a rescission of the contract, is, the delay on the part of the vendors to execute it. The answer is, that the plaintiff has never offered to perform it on his part. The parties are in *pari delicto*, and, in such a case, unless there are circumstances giving to one party a superior equity, he can not call for a dissolution of the contract, at least until he has offered to perform it on his part. *Story's* Eq. Jur., s. 694, *et seq.—Duncan* v. *Jeter*, 5 Ala. 604.—*Ayres* v. *Mitchell*, 3 S. and M. 683. It has been insisted in argument, that the true test of *Dawson's* right to rescind is to be answered by the inquiry, whether a specific performance of the contract would be decreed at the instance of the vendors. We do not think so; nor do we now decide whether they would be entitled to its specific execution or not. There are many cases in which a rescission will not be decreed, although a specific perform-

ance would also be refused. *Walker* v. *Collins*, 11 Ohio 31.—*Jackson* v. *Ashton*, 11 Pet. 229.

The right to rescind is further claimed because *William G. Ewing*, *G. W. Ewing*, *Alexander Ewing* and *Charles W. Ewing* were married men, whose wives were living at the time of the sale, and had an inchoate right of dower in the lots, and were not parties to the proceedings in partition. It appears, however, that before this suit was commenced, all these parties conveyed their interests to the trustees, *Brackenridge* and *McCulloch*, and the wives joined in the conveyance, for the express purpose of enabling them to convey to the purchasers. By the contract, the last payment of the purchase-money and the conveyance were to be concurrent acts. It contains no stipulations making time essential; and both parties were equally in default. Had *Dawson* then offered to perform on his part, the trustees were able to comply on theirs, which was sufficient. *Hepburn* v. *Auld*, 5 Cranch 262.

A further position assumed is, that the contract contained a stipulation that on payment, &c., the trustees or their successors should convey the property by deed in fee, with covenant of general warranty; and it is insisted that that stipulation amounted to a nullity, for want of power in the trustees to make it; and that it was inserted for the purpose of defrauding purchasers. There is no proof in the record as to the motive for inserting that provision. It is shown that in making the contracts, printed blanks were used, and that *Charles W. Ewing*, procured them to be printed, and that he furnished the form. This was not sufficient to establish a fraudulent purpose, and the plaintiff does not allege in his bill that he was deceived or defrauded by it. In regard to the power to make the stipulation, it is evident that the trustees had no such authority. The certificates show that they were acting under authority of the Court, and that their sales were subject to confirmation. This fact was well known to *Dawson* when he purchased. Under these circumstances, the stipulation, if not wholly void, amounted at most to nothing more than a personal undertaking on the part of

May Term,
1856.

BRACKEN-
RIDGE
v.
DAWSON.

the trustees, and did not affect the validity of the sales, or bind their successors to make such deeds. The purchasers were bound to know that all the power the trustees could exercise, rested in the decree under which they acted.

We have noticed the grounds chiefly relied on for the rescission of the contract, and shown them to be untenable. There is another general objection to the decree, which applies to the whole case, and shows that the bill contains no equity. The plaintiff alleges that he was but a nominal purchaser, and says that he never had and never desired to have any interest in the property; that he was merely the medium of passing the title to *Spencer*. He does not allege that he paid the one-fifth of the purchase-money. The bill states guardedly that it was paid, but does not say by whom. The plaintiff examined *Spencer* as a witness, who does not state who made the first payment; but it is inferred from his testimony that he paid it himself, because he testifies that the contract was exclusively his own; that *Dawson* had no connection with it, except to allow his name to be used; and he further proves that the certificates of purchase were all indorsed to him in blank by *Dawson*, and does not testify that they were ever re-assigned, nor is there any proof that they were. He testifies, also, that he paid the taxes on the property; for the amount of which, and of the first payment, the Circuit Court decreed in favor of *Dawson*.

Although *Dawson* stood bound for the purchase-money, he had no such interest in the contract of purchase, which he had assigned to *Spencer*, as would enable him to maintain a bill for its rescission; nor was he entitled to recover the purchase-money or the taxes which *Spencer* had paid. It follows that the bill can not be sustained.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the bill.

*O. H. Smith, C. Dewey, R. Brackenridge*, jr., and *S. Yandes*, for the appellants.

*J. B. Howe*, for the appellee.