[The Constitution of 1869, having prescribed but one term of the Supreme Court for each year, and that to be held at Austin, the designation of the terms is altered as above. The annual term begins on the first Monday in December, and continues so long as the court deems necessary.—REPORTER.]

---

A. SYDNEY JOHNSTON'S ADMINISTRATOR v. D. SHAW AND OTHERS.

1. In all cases wherein executions issue upon dormant judgments, all parties and privies are chargeable with notice and can acquire no title to land sold under such executions.

2. Executions were issued on four dormant judgments for costs, and were levied on a league of land belonging to J. Only one of the judgments was against J., and he had more than satisfied that one by payments made to the officers of court but not credited by them. The land was worth three dollars and a half per acre, but at the execution sale the whole league was struck off for forty dollars to a nominal purchaser, who immediately conveyed it to parties who were then litigating with J. the present suit for the land. *Held*, that these circumstances, taken in connection with the enormous inadequacy of the price paid at the execution sale, not only justify the inference of fraud, but point to it almost conclusively.

APPEAL from Harrison. Tried below before Hon. J. B. Williamson.

This was an action of trespass to try title, instituted as long ago as 1845 by A. Sydney Johnston against D. Shaw. In 1847, Barbara C. and James F. Timmins, as executors of the last will and testament of Thomas Timmins, deceased, under whom Shaw held possession as a tenant, made themselves parties defendant. The respective rights of the parties, as they stood at and for several years after the institution of the suit, are not involved in the present opinion.

It appears by the statement of facts that in 1849 there were four suits on the docket of the District Court of Harrison county, brought by Johnston against the State of Texas, for the purpose of establishing grants of land. On the eleventh of July, 1849, interlocutory judgments for costs were rendered in these cases. In one of them the judgment was explicitly against the plaintiff, who was Johnston. In the other three the recovery was literally against the defendant, which was the State; though the context makes it probable that in these cases, also, it was the plaintiff who was adjudged to pay the costs then accrued. These were the judgments on which were issued, in 1853, the executions adverted to in the opinion.

At the sale under these executions the entire league was struck off to George W. Gresham for forty dollars, and on the same day he conveyed it by a quit claim deed to J. F. Timmins and sundry others, " the heirs at law of Thomas Timmins," who, as already stated, was the landlord of the defendant Shaw, and the testator of the other defendants, his executors.

The plaintiff amended his petition and made defendants of the several parties who claimed or ostensibly acquired any interest under Gresham's deed.

At the trial of the cause, in 1868, the plaintiff proved by Gresham's widow that James F. Timmins and her husband were very friendly and intimate; that in the spring of 1853 (apparently when the execution sale was about being had) Timmins

came from Cherokee county, where he then lived, and stayed all night with Gresham, and on the next day they started together for Marshall, at which place the execution sale took place.

The foregoing, in connection with the facts stated in the opinion of the court, suffices to show the character of the claim set up by the defendants as derived from the execution sale, and which is the only feature in the case involved in the present adjudication.

*S. P. Donley*, for the appellant.

*M. J. Hall* and *N. H. Wilson*, for the appellees.

WALKER, J.—This is an action of trespass to try title. The parties deraign from a common source.

The only question for decision by this court is as to the validity of the deed of Perry, sheriff of Harrison county, to the grantor of the defendants.

On the trial the court submitted to the jury, among other special issues, the following : Seventh—Did more than one year elapse from the issuance of any one execution to the issuance of another on said judgments, previous to the one on which the sale was made ?

The verdict, in response to this issue, is as follows : Seventh— We find that more than one year did elapse from the issuance of one execution to the issuance of another on said judgment, previous to the one on which sale was made.

The judgments, then, as the law existed in 1853, were dormant, and there is no pretense that they were ever revived.

In the case of Scott & Rose v. Allen, 1 Texas Reps., 508, the court say : "An execution not sued out within a year from the rendition of the judgment is *void* under the limitation act of fifth of February, 1841."

According to the findings of the jury, the judgments upon which the lands in controversy were sold, were declared void by

this decision; but in the later cases of Sydnor v. Roberts, 13 Texas, 598, and Hancock v. Metz, 15 Texas, 209, this doctrine is somewhat modified. In the latter case, that of Sydnor v. Roberts is approved, but no allusion whatever is made to the case of Scott & Rose v. Allen. The later cases are in conflict with the former, unless the court intended to hold that all persons living within the county in which a judgment had been rendered, but had become dormant by reason of the non-issuance of execution within the year required by law, should be chargeable with notice.

In both the latter cases referred to, execution was sent to a county different from that in which the judgment had been rendered.

In the case of Hancock v. Metz, the court say: "Where there is a valid judgment, irregularities in the issuance of executions must be taken advantage of by the proper person and at the proper time, or they will not affect the validity of the title of the purchaser at a sale under the execution."

In the case of Bennett and wife v. Gamble, (1 Tex. R., 124,) the court say: "An execution which is merely voidable can only be objected to by one of the parties to it; but an execution which is void may be objected to by any person whose interests are affected by it."

The case of Scott & Rose v. Allen makes the executions under which the lands in controversy were sold, *void.* The case of Hancock v. Metz makes them *voidable,* and by the case of Bennett and wife v. Gamble, Johnston could object to the executions in either case, whatever they were, void or voidable, and we think it clear that any right which Johnston had is a right saved to his administrator. We might, however, be met with some difficulty in setting aside the title of the defendants in this case, were it clear to our minds that they were innocent purchasers from Gresham. On this point, however, we are by no means satisfied.

The evidence shows that Gresham nominally purchased the

lands at sheriff's sale, on the fifth day of April, 1853; that Gresham, Timmins and Ford attended the sale together, and that on the same day Gresham deeded the land to the defendants.

The defendants claim title through Gresham, who purchased at a sale made to satisfy four several judgments for costs, rendered in the District Court of Harrison county. The cases were numbered 1336, 1337, 1338 and 1339.

Looking to the record, the only one of these judgments rendered against Johnston was that in number 1339. It is possible that the court intended to enter a judgment against Johnston in each of these cases for costs ; but we do not think it within our province to construe a judgment which is against the defendant, by the letter and terms of the record, to be a judgment against the plaintiff.

Taking this view, then, there was but one judgment against Albert Sydney Johnston, upon the records of the District Court of Harrison county. The other three were judgments in his favor for costs. Among the evidence in the case there are two receipts for money received to apply to the costs of certain judgments against Johnston in the district court, amounting in the aggregate to thirty dollars. The one is signed by C. C. Taliaferro, deputy sheriff, the other by R. L. Ford, clerk of the district court.

The amount received was more than sufficient to have paid all the costs assessed against Johnston. We are led to believe that there are either palpable mistakes or a deliberate intention to commit a fraud. Executions are issued on four judgments, and levied on the lands of Albert Sydney Johnston. Three of the judgments were not against him. The executions were sued out upon dormant judgments. No credits are given for the money received by Taliaferro and Ford. Gresham is the nominal purchaser, but evidently the real purchasers were the defendants.

The land was sold for forty dollars; its actual value, although

greatly reduced by reason of its being in litigation as found by the jury, was three dollars and a half per acre.

In Allen v. Stephens, 18 Texas Rep., 658, the court say: "The rule as laid down in the charge of the court, and as it is generally expressed is, that inadequacy of price at a sale made under process of law is not sufficient, without additional circumstances, to invalidate the sale, (not on a question of confirmation.) But in cases where the disproportion is so enormous as in this, but slight additional circumstances will justify the inference that the sale is fraudulent."

We think the inadequacy of consideration in this case is more than sufficient to bring it within the rule; and that the circumstances existing here not only justify the inference of fraud, but they point to it almost conclusively.

It is, then, the opinion of the court that in all cases where execution issues upon a dormant judgment, all parties and privies are chargeable with notice, and that no valid title can be acquired by virtue of a sale made under such execution, by any person chargeable with such notice; and that a sale of the plaintiff's land, upon execution to satisfy a judgment rendered against the defendant, and for the payment of which the plaintiff is not liable, is void and passes no title; and that by reason of the gross inadequacy of consideration, coupled with circumstances strongly tending to prove fraud, the supposed title of the defendants in this case should be set aside.

The judgment of the district court is reversed and the cause remanded.

Reversed and remanded.