## WM. CRAVANS v. M. J. WILSON.

1. Note the animadversions of this court, in this case, upon the practice of district courts in submitting numerous special issues to juries, without proper instructions upon the law governing the issues.

2. It has already been settled by this court, that so long as the unconstitutional stay laws of 1866 were in practical operation, judgments did not become dormant by reason of the non-issuance of execution. (Phillips v. Lesser, 32 Texas, 741; Sessums v. Botts, 34 Texas, 335.)

3. The stay law of November 10, 1866, though unconstitutional and void in its objects and leading provisions, kept judgments in force in a manner to authorize the issuance of executions within twelve months after the adjudication of the unconstitutionality of that enactment by this court, in January, 1868.

4. In October, 1866, C. recovered judgment against W., but, in consequence of the stay laws then in operation, no execution was issued until March 23, 1868. On the fourteenth day of March, 1868, another creditor recovered judgment against W., and execution was promptly issued thereon. Execution on C.'s judgment first came to the hands of the sheriff, who levied both executions upon lands of the defendant. At the sheriff's sale the land was purchased by C., and the purchase money was applied to his judgment. Thereupon the other creditor, treating the land as still subject to his judgment, sued out *alias* execution, and under it caused the sheriff to sell the land again, when he became the purchaser, and then instituted trespass to try title against C. *Held*, that C.'s judgment was not dormant when his execution issued; that his title to the land was better than the plaintiff's; and that, inasmuch as the first sale was made under both judgments, the proper remedy of the plaintiff, if he had been aggrieved, was not by suing out *alias* execution and causing a second sale of the land, but by motion against the sheriff to compel the application to his judgment of the proceeds of the first sale.

5. A sheriff's return of a levy upon personal property does not estop the execution creditor from proving that the amount of the property, as actually seized and applied to his execution, was less than that returned in the levy.

APPEAL from Shelby.    Tried below before the Hon.
M. W. Wheeler.

The opinion of the court states clearly the material
facts of the case.

*Moore & Shelley*, for the appellant.

No brief for the appellee has come to the hands of
the reporter.

WALKER, J.—This is an action of trespass to try
title, appealed from the District Court of Shelby county.
The subject of controversy is a tract of land containing
about nine hundred acres.    On the twenty-ninth of
March, 1866, the appellant, Cravans, sued out an at-
tachment against the property of Benjamin Wilson.
The officer holding the attachment levied on a quantity
of cotton, which was estimated by him at sixty thous-
and pounds.    The cotton was contained in a house in
close proximity to the dwelling of the defendant, Ben-
jamin Wilson, and the officer appears to have left it
under his control for about two years.    In the mean-
time, about one bale of the cotton appears to have been
taken away by a neighbor of Wilson, who claimed it
for debt.    Benjamin Wilson, in his evidence, states
that the cotton was not otherwise disturbed ; yet, when
sold under execution some two years after the attach-
ment, there was found to be only twenty-eight thous-
and pounds.    In October, 1866, judgment was rendered
for Cravans, and the cotton attached was ordered to be
sold.

The act of November 10, 1866, very soon went
into force, doubtless preventing the issue of execution,
and none was issued until after the decision of this
court declaring the stay law, for certain purposes, un-
constitutional.

On the ninth of March, 1868, Matthew J. Wilson, the appellee, commenced a suit against Benjamin Wilson, and five days afterward recovered judgment by default, for a large sum of money. On this judgment execution issued on the second day of April, 1868. In the meantime, the officer receiving the execution had also in his hands an unsatisfied execution in favor of Cravans. On the fifteenth day of April, 1868, the sheriff levied both executions upon the land in controversy, giving priority to that of Cravans, it being on the older judgment, and first received by the sheriff.

The land, advertised under both executions, was sold and was purchased by Cravans on the second of June, 1868, and the proceeds of sale were applied to his execution. The sheriff made a deed to him for the land; and no exception appears to have been taken to any part of the proceedings for about two years, when a motion was made by appellee's counsel tó amerce the sheriff for not applying the money to the satisfaction of his execution.

The record does not show what action was ever taken on this motion. But about the same time, the appellee sued out an *alias* execution, levied it upon the land in controversy as the property of Benjamin Wilson, and on the seventh of June, 1870, sold the land, which was purchased by the appellee; and the sheriff making him a deed, he at once commenced this action to recover the land.

Without giving particular notice to the errors assigned upon the rulings of the court, other than to remark, that in this, as well as in some others of our district courts, a practice appears to have obtained of submitting certain special issues to the jury, without proper instructions as to the law governing those issues. And sometimes, indeed, issues purely of law

are submitted to the determination of juries. In this case the jury did not respond in an intelligible manner to the fourth and thirteenth issues. In answer to the seventh and thirteenth issues, the jury returned a statement of facts, rather than a finding upon those facts.

Twenty or more of these special issues appear to have been submitted, and the findings are so varied and contradictory that a judge or chancellor endowed with the clearest and most acute mind might have been in doubt whether plaintiff or defendant was entitled to judgment. The frequent resort to this mode of trying causes must, to a great extent, render uncertain, and to a high degree unsatisfactory to litigants, the judgments predicated upon such special findings; and although authorized by law, the practice, in our judgment, should not be encouraged. Hoping these remarks may tend, in some degree, to correct a practice of doubtful propriety and subject to frequent abuse, we proceed to consider the questions on which it is proposed to determine this case.

The appellant has the older title to the land in controversy, and, unless vitiated by some defect in law, it is the better.

He had the older judgment, and by the act of November 9, 1866, it became a lien on the lands of Benjamin Wilson, situated in the county of Shelby, for one year, without execution. But the act of November 10, 1866, known as the Stay Law, prevented the suing out of executions. Under these circumstances, did Cravans's judgment become dormant? This court has decided that a judgment under like circumstances did not become dormant. (See decisions at December term, 1870.) Our predecessors have also decided the stay law of 1866 to have been unconstitutional for certain purposes; but without intending to overrule that decision, we cannot

hold that parties who were inhibited from suing out executions upon their judgments by that law, whilst it remained upon the statute book unrepealed, and without judicial construction, should lose any right incident to them as the owners and holders of otherwise valid judgments.

But had we arrived at any other conclusion, we cannot see how it could affect this case. The appellant's judgment could only have been voidable, and not void, and the purchaser at a sheriff's sale under such a judgment might have got a good title. (Sydnor v. Roberts, 13 Texas, 614; Ayres v. Dupree, 27 Texas, 603; Hawley v. Bullock, 29 Texas, 224. See also cases determined by this court at the December term, 1870.)

But without placing our decision upon these cases, we are clearly of the opinion that the act of November 10, 1866, did keep judgments alive and in force in a manner to authorize the issuance of executions within the time authorized by law. But there is another reason, apparent upon the record, which supports the validity of the appellant's title. For whatever may be the verbal statement of the sheriff, his proceedings as shown to us by the record establish the fact that the sale to the appellant was made under both his and the appellee's execution; and if by the proceedings the appellee was aggrieved, he had his remedy, and should have claimed the application of the money to the satisfaction of his execution. And it is not satisfactory to us why he did not insist upon the disposition of his motion for this purpose. (See Towns v. Harris, 13 Texas Reports, 511; 28 Texas Reports, 572.) But the appellee insists that a presumption of law had arisen against the validity of the appellant's execution, growing out of the proceedings under the attachment. The sheriff estimated the quantity of the cotton attached at

sixty thousand pounds. There is a presumption that personal property levied upon, and not returned to the possession of the debtor, has been applied to the execution, but it is not a conclusive presumption of law which cannot be explained or rebutted; and in this case the evidence of Benjamin Wilson, the judgment debtor, which is uncontradicted, clearly shows that he got the benefit of every pound of cotton originally attached, including the bale taken by his neighbor.

Were this, then, a controversy between Cravans and Benjamin Wilson, Wilson's own testimony would fully exonerate both Cravans and the officer holding the levy from any misapplication of the cotton.

The mistake of the officer, in estimating the quantity levied on, should not preclude him nor the judgment creditor from explaining the mistake; and if such mistake is satisfactorily explained, neither the officer nor the judgment creditor should be bound by it. It remains, then, to be seen whether a subsequent judgment creditor would stand in any better position on this point of the controversy than the judgment debtor himself; and this question is most conclusively settled by the authorities referred to in the very able brief filed by appellant's counsel. (28 Texas, 181–202 ; 22 Texas, 496 ; 13 Texas, 232 ; Pas. Dig., page 620, and notes; United States v. Dashiel, 3 Wallace ; 18 Texas, 294 ; 13 Texas, 498; 15 Texas, 395; 28 Texas, 572.)

For the reasons given in this opinion, the judgment of the district court is reversed, and the cause remanded.

REVERSED AND REMANDED.