GILES S. BOGGESS, JR., v. J. L. HOWARD AND L. KAY.

1. After an order dismissing the writ of error, plaintiff was allowed until the next term to file a new error bond.

2. A judgment rendered in a justice's court on March 5, 1859, on which executions had been regularly issued until October 27, 1859, and upon which, on the twenty-sixth of January, 1869, *pluries* execution was issued, was not dormant at the issuance of. the last execution; the act of February 14, 1860, protecting the judgment until the repeal of that act on November 2, 1866; the stay law enacted by the Eleventh Legislature dispensing with acts of diligence until that law was adjudged unconstitutional on the twenty-fourth of February, 1868; and the execution having issued within one year after the stay law was declared invalid.

3. While an execution sale made under a dormant judgment may be avoided by the defendant in execution, a stranger cannot object to such execution, or to the title of the purchaser at such sale, in a collateral proceeding.

4. Where a party in a collateral action claims under a sheriff's deed, the court cannot look into irregularities of the process or proceedings of the sheriff.

5. This rule is, if not identical with a corollary from the elementary principle, that acts done under an erroneous judgment are valid and binding until they are reversed; and in this there is no practical difference where the matter is sought to be brought collaterally in question, whether the right claimed under it is made by a party or a stranger.

6. Johnson v. Shaw, 33 Texas, 585, limited.

ERROR from Rusk.   Tried below before the Hon. J. B. Williamson.

The facts are fully stated in the opinion of Justice Moore.

*W. W. Morris*, for plaintiff in error, cited 33 Texas, 585, Johnson v. Shaw.

*James H. Jones*, for defendants in error, cited Paschal's Digest, Article 1515 ; 23 Texas, 560, Waterhouse v. Love; 13 Texas, 598, Sydnor v. Roberts ; 27 Texas, 603, Ayers v. Dupree.

WALKER, J.—The writ of error in this case must be dismissed for want of a proper bond.   The bond is not in conformity with the statute.   (Art. 1517, Pas. Dig.) The case of Waterhouse v. Love, 23 Texas, 560, and numerous subsequent cases, decide the question.

DISMISSED.

Opinion rendered March 10, 1873.

The case was reinstated, and plaintiff in error allowed until next term to file a new bond, which term began on December 3, 1873.

MOORE, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the appellant, Boggess, against the appellee Howard, to which appellee Ray, the landlord of Howard, made himself a party defendant. By agreement of the parties in the court below, a jury was waived and the case submitted to the determination of the court, by whom a judgment was rendered in favor of defendants.   The record shows that appellant and appellees claim title to the land in controversy under a common source, and the only question presented for the con-

sideration of the court is, which of them have shown the superior and better title.

On the eleventh of September, 1868, appellant brought suit in the District Court of Rusk county against J. R. Littell, on a promissory note of said Littell, of which he claimed to be the bearer ; and on the second of March, 1869, he caused to be issued an ancillary attachment against the property of said Littell, which was on said day levied upon the land in controversy. At the Spring term, 1869, of said court, it was adjudged that he recover the amount claimed, and that an order issue to the sheriff commanding the sale of the land upon which the attachment had been levied. In pursuance whereof, said land was sold by the sheriff on the sixth of July, 1869, to appellant, for the sum of sixty dollars.

The appellees claim under a deed from the sheriff to appellee Ray, as the purchaser at a sale of said land on the second of March, 1869, on an execution issued on the twenty-sixth of January, 1869, on a judgment in favor of E. Jacobs, against said Littell, by a justice of the peace of Rusk county, on the fifth of March, 1859.

It is clear, therefore, as appellees have the older title, the court did not err in rendering judgment in their favor, unless the record discloses some intrinsic defect in their title, or the judgment or proceeding under it, of which appellant can take advantage, and which entitles him to hold the land under his junior title. Appellant maintains that the judgment upon which this execution issued was dormant ; and as Ray controlled the judgment, and both himself and Howard were present at the sale, and heard appellant's counsel give notice, previous to said sale, that said judgment was dormant when said execution issued, and that his attachment had been levied upon the land, the sale was absolutely void, or at least no title passed thereby to said Ray. This proposition involves two questions ; first, was the judgment upon which

the execution issued dormant? second, if so, was the sale under it to a party or privy void? — to neither of which can we concur in the conclusion insisted upon by appellant.

The judgment was rendered, as we have said, on the fifth of March, 1859; execution issued thereon on the sixteenth of the same month, which was returned on the sixteenth of May, 1859. *Alias* execution issued June 13, 1859, returned August 17, and a *pluries* issued on the twenty-fourth of the same month, which was returned on the twenty-seventh of October, 1859; from which time until the twenty-sixth of January, 1869, no diligence seems to have been used to enforce the judgment. But by the act to prevent judgments from becoming dormant, and to create and preserve judgment liens, which took effect on the fourteenth of February, 1860, it is provided, "Whenever judgment shall be rendered by any court within this State, it shall be competent for said court, or the clerk of said court, to issue execution thereon at the instance of any party interested, and said judgment shall not become dormant unless ten years shall have elapsed between the issuance of executions on the same."

As this judgment was not dormant when this law took effect, and as it includes the judgments of "any court within the State," it certainly did not become so by a failure to issue execution upon it prior to the repeal of this act of February 14, 1860, by the act to prevent judgments from becoming dormant, etc., passed November 9, 1866. The third section of this latter act reads, "No judgment of a court of *record* shall become dormant unless ten years shall have elaped between the issuance of executions."

Mr. Justice, Wheeler, in the case of Wahrenberger v. Horan (18 Texas, 59), says: "Whether justices' courts in this State are to be deemed, for any purpose, courts of record, has never been determined by this court." And

we are aware of no subsequent case in which the question suggested by this learned judge, but not then decided, has been answered, nor do we propose upon the present occasion to enter upon its discussion. If the judgments of justices' courts do nót come within this provision of the act of 1866, then there was no statute directly applicable to them. And as it was held in the case of Wahrenberger v. Horan that, by analogy to the statute of limitations barring suits on judgments of courts of record, suits on judgments in justices' courts are not barred until the lapse of ten years, it might be insisted by like analogy such judgments are not dormant unless ten years shall have elapsed between the issuance of executions on them. But if we admit, on the repeal of the act of 1860 we must look to the analogy of the common law, and should conclude from it that judgments of justices' courts become dormant unless execution issue within a year and day of their rendition; or, if execution has issued within the year, when there is a failure to issue subsequent writs from year to year—which we believe is to put the rule as strongly as it has ever been insisted upon—it may still be answered, that since the issuing of execution was restrained by the stay laws, it was not until they were pronounced unconstitutional by judgment of the court, February 24, 1868, it became absolutely incumbent upon the plaintiff in the judgment in the justice's court to cause his execution to issue; and, as is shown by the record, it did issue in less than one year from that time. (Jones v. McMahan, 30 Texas, 709 ; Sessums v. Botts, 34 Texas, 336 ; Cravens v. Wilson, 35 Texas, 52 ; Williams v. Murphy, 36 Texas, 174.)

If the judgment was dormant, however, when the execution issued under which appellees claim, while it would follow that Ray, who seems to have had control of it, got by his purchase merely a defeasible title, which might have been set aside or avoided by a proper proceeding

by the defendant in the execution, we do not think objection to the execution, or the title of the purchaser under it, can be raised by a stranger to the judgment in a collateral proceeding. In the cases of Sydnor v. Roberts, 13 Texas, 598; Hancock v. Metz, 15 Texas, 209; Hawley v. Bullock, 29 Texas, 224; Andrews v. Richardson, 20 Texas, 287, it was held by this court, that executions on dormant judgments are erroneous and voidable, but not void. In the case of Johnston v. Shaw, 33 Texas, 585, although the cases just referred to are not overruled, they seem, as we think, to be somewhat questioned. Be this, however, as it may, it is unequivocally announced by the court in this case, that no valid title can be acquired by a sale under an execution upon a dormant judgment by any person chargeable with notice. And as the objection to the title was made in a collateral proceeding, we must conclude, that the court also intended to hold that as to purchasers with notice the sale was void, and not voidable. This is certainly contrary to the views approved by this court in discussing the questions involved in the case of Ayers v. Duprey, 27 Texas, 593. It is there said, after distinctly declaring that the plaintiff in the erroneous and voidable execution cannot be considered a *bona fide* purchaser, and the title wrongfully acquired by enforcing such execution may be avoided at the instance of the defendant: "It seems, however, to be abundantly settled, that the question of irregularity, or error in the execution or proceeding under it by the sheriff, can never be discussed collaterally in any other suit. When a party in a collateral action claims under a sheriff's deed, the court cannot look into alleged irregularities in the process or proceedings of the sheriff. Nor could it, in such case, make a decree avoiding the sale, and at the same time protect the interest of all parties whose interest would be thereby affected. (Jackson v. Robins, 16 Johnson, 537; Thompson v.

Phillips, 1 Baldwin C. C., 246; Surggart v. Harber, 4 Scamman, 364; Pollard v. Locke, 19 Ala., 188.) The fact of the plaintiff in execution being one of the parties to a collateral suit does not vary the rule." These views, we believe, are fully sustained, not only by the numerous cases cited in the opinion, but by a still greater number from courts of the highest authority to which it was deemed necessary to refer. (Mills v. Knott, 12 Gill. & Johns., 442; Wonder v. Tainter, 4 Watts, 270; State v. Morgan, 7 Ind., 387; Ware v. Bradford, 2 Ala., 676; Love & Williams v. Powell, 5 Ala., 38; Buckmaster v. Carter, 3 Scam., 107; Woodcock v. Burnett, 1 Cow., 737; Voorhees v. The Bank of the United States, 10 Pet., 449; 2 Pet. Dig., 197; Willard v. Whipple, 40 Vt., 219; Mariner v. Coon, 16 Wis., 465.)

The rule by which the courts are controlled in the decision of this question is, indeed if not identical with a corollary from the elementary principle recognized by the unbroken current of decision from the time of Manning's case (8 Coke), that acts done under an erroneous judgment are valid and binding until they are reversed. And though there is a plain and well recognized distinction between strangers and parties to such judgments, in respect to rights acquired and acts done under them before their reversal, but as mere error which does not amount to absolute nullity cannot be connected in a collateral proceeding, it follows, until the jugdment or the proceeding under it brought in question has been reversed, set aside, or corrected, there is no practicable difference, when the matter is sought to be brought collaterally in question, whether the right claimed under it is made by a party or a stranger.

There being no error in the decision of the court below, it is affirmed.

AFFIRMED.