## A. Sidney Johnson's Administrator v. Shaw et al.

1. WHEN POWER OF ATTORNEY PRESUMED.—In most cases where a
   deed would be evidence as an ancient deed, without proof of its exe-
   cution, the power under which it purports to have been executed
   will be presumed.
2. JUDGMENT.—When a judgment is rendered upon the verdict of a jury
   finding a special issue, which is unsupported by evidence, this court
   will not suffer the judgment to stand.
3. WHEN TITLE WITHIN BORDER LEAGUES VALID.—A title extended
   by Geo. W. Smyth, special commissioner of the State of Coahuila
   and Texas, appointed under the act of March 26, 1834, granting land
   to a party on the frontier of Nacogdoches, was valid though within
   the border leagues.

APPEAL from Harrison.    Tried below before the Hon.
J. B. Williamson.

Twenty-eight years have elapsed since the institution of
this suit, which has survived the judge before whom it was
brought and all the attorneys originally employed.    The
action was in trespass to try title, brought by appellant's

intestate against Shaw and others to recover a league of land in Harrison county, granted to Henry Harper on the 13th October, 1835. The defendants answered not guilty; the general issue; and specially that the land was sold in 1833 by the sheriff of Harrison county, under certain executions issued upon judgments obtained in the District Court of Harrison county against Albert Sidney Johnson, at which sale one Gresham became the purchaser of the land in controversy, and that since that time the title to the land had been outstanding in Gresham. Those executions were for costs, and under them the league of land, worth then from twelve to fifteen thousand dollars, was sold for forty dollars. The plaintiff alleged the fraudulent character of the execution sale; that it was fraudulently procured by defendants; and prayed that Shaw and others be precluded from availing themselves of the sheriff's deed.

Johnson's administrator claimed title by virtue: 1st. Of the grant to Harper. 2d. A power of attorney to E. M. Fuller. 3d. A power of attorney from Franklin Fuller and E. M. Fuller to one Frost Thorn, dated October 14th, 1835, in which E. M. Fuller alone claimed the power to substitute Frost Thorn in his stead, to convey the Harper league. 4th. A deed from Frost Thorn to William Brookfield, dated October 14th, 1835 and 6. A deed from Brookfield to Albert Sidney Johnson, dated February 10th, 1840. These instruments were all read in evidence, except the power from Harper to E. M. Fuller, and the plaintiff attempted to establish that by the recitals in the power from Fuller to Thorn, and by the testimony of Louis Ruez, taken in Paris, France. The fact mainly relied on by the defense, in addition to their objection on account of the missing link from Harper to Fuller, was the sale of the land by the sheriff in 1853. The recitations in the power of attorney from the Fullers to Frost Thorn, executed before Ruez, a judge of the first instance, were as follows: "*   *   personally appeared before in my office the citi-

zen Franklin Fuller and E. M. Fuller, and both said that, being attorneys, the *first* of the citizen Elisha De Spaine and Hiram Blossom, and the *second* of the citizens Henry Harper," &c., &c.

Ruez testified that Franklin Fuller and E. M. Fuller had irrevocable powers of attorney from the parties named, (among whom was Henry Harper,) with power of substitution, and that these papers and the power of attorney from the Fullers to Thorn were produced before him on the 14th October, 1835, and filed in his office; that these powers of attorney were on file in the proper office in Nacogdoches when he left it prior to 1838, but that since then he had searched for them, and could not find them.

Many special issues were submitted to the jury. In response to the 3d, they found that "Harper did not give Fuller a power to sell the land." There was a judgment rendered for the defendants, from which the plaintiff appealed. The errors relied on in the motion for new trial and assignment of errors are sufficiently indicated in the opinion.

The action of this court when this case was before pending on appeal will be found in 33 Tex., 587.

*George Lane*, for appellant.

*H. McKay* and *William Steadman*, for appellee.

DEVINE, ASSOCIATE JUSTICE.—The variety of questions presented by the pleadings during the twenty-eight years' litigation in this case requires a statement of the principal points presented by the pleadings, and a comparison of or reference to the most important facts adduced on the trial.

The original plaintiff, Albert Sidney Johnson, brought suit in the District Court of Harrison county, at the fall term, 1845, to recover, as owner, the league of land granted to Henry Harper.

The original defendant, Dushee Shaw, excepted to

plaintiff's petition, and answered with a general denial, amended by claiming title under Timmins, and averred that he had made valuable improvements, &c.   At a subsequent term, Barbara C. Timmins, as the executrix, and James F. Timmins, as the executor of Thomas Timmins, made themselves pärties; claimed that Shaw was their tenant; excepted generally; claimed title under the Republic of Texas; asserted that their testator was a purchaser in good faith, and claimed pay for individual improvements.   Other parties were made defendants, and, after various amendments by plaintiff and defendants, the death of A. Sidney Johnson being suggested, his administrator, Jesse H. Curlin, was made a party; and at the July term, 1873, the heirs of the original plaintiff having made themselves parties, and a compromise being made with several of the defendants for a large portion of the land in controversy, the suit was discontinued as to them and an agreed judgment entered, and the cause proceeded to trial as to the remaining defendants.

The finding or verdict of the jury was rendered on seventeen special issues presented by the charge, upon which the court rendered judgment in favor of defendants.   The plaintiff's motion for a new trial being overruled, the case is presented on the bills of exceptions and errors assigned, the principal ones being the errors in the charge of the court, and the findings of the jury on the issues presented to them by the judge.

The principal questions in the court below, and mainly relied on in this by defendants, were—1st. The want of title in plaintiff, by reason of the want of power on the part of Fuller to act as the attorney in fact of Henry Harper in the execution of the instrument authorizing Frost Thorn to sell the land claimed by plaintiff in the suit, and the existence of an outstanding title in defendants, Timmins, by deed from Gresham.

On the first of these questions the jury found that " Har-

per did not give to the Fullers a power of attorney to sell said land." This finding is literally true, as the power was to E. M. Fuller, and not to F. Fuller and E. M.; and in the power from the Fullers to Frost Thorn, F. Fuller executes the power only as the attorney of E. D. Spaine and H. Blossom, and E. M. Fuller executes it as the attorney of Henry Harper and others; and the proof as to the existence of the power throughout the trial was to the same effect. This finding, however, seems to have been considered by the court and counsel of both parties, and was doubtless intended by the jury to ignore the existence of a power not only from Harper to the Fullers, but likewise from Harper to E. M. Fuller, who assumed to act as attorney under power.

Ordinarily the verdict of a jury is entitled to great consideration, and ought not be disregarded or set aside unless for reasons abundantly sufficient. When, however, a verdict is rendered or an issue found, not only where the evidence was totally insufficient to support the finding, but, as in this case, in the face of strong circumstantial and direct proof of the existence of a power which the verdict denied, and when the attorney acted under it, then the finding of a jury should not be permitted to affect injuriously the rights of litigants.

The facts in this case show that the finding of the jury was contrary to the evidence, and the charge of the court was defective, in failing to direct the jury to the question presented.

The plaintiff on the trial introduced the grant or concession to Henry Harper for the land in suit, dated October 9th, 1835. A power of attorney executed on the 14th of October, 1835, before Louis Ruez, "judge of the first instance" at Nacogdoches, by Franklin Fuller and E. M. Fuller, the first as the attorney in fact of Spaine and Blossom, the second as the attorney of Harper and seven others, authorizing Frost Thorne, as their substituted attorney, to sell

or dispose of the leagues of land granted to each of their principals; proof of the loss or destruction of the power to Thorn, and search for it being shown, a certified copy was read in evidence. The sale of the land by Thorn (as substituted attorney of Harper) to William Brookfield, on the 15th of October, 1835, and a deed from Wm. Brookfield to plaintiff on the 10th of February, 1840. The answers of Louis Ruez to interrogatories propounded to him show, from a memorandum book and his memory or recollection of the facts, that when the Fullers appeared before him to execute the power of sale to Thorn, they presented to him a power executed by Harper and other grantees, nine in number, authorizing the Fullers to act as their attorneys; that the power was an irrevocable one, with power of substitution; that this power, with the power to Thorn and original deeds from Thorn to Brookfield, ten in number, were on the 14th of October, 1835, before him, and were deposited by him in his office; that the power to the Fullers was signed and properly executed before a public officer; that he is positive he would not have acted in his official capacity if such power was not before him, and that in all things touching this matter he acted in his official capacity. This witness further stated that, after he had retired from office, he visited, at the request of Mr. Amory, an attorney at law, the office at Nacogdoches, and searched for the power referred to, and could not find it; that it was on file when he retired from his office, and was " unable to say how they disappeared or where they are."

This court, in the case of Watrous v. McGrew, 16 Texas, 506, said the deed being executed before a notary public in New Orleans, in 1838, for lands in Texas, and the deed reciting that the party executing it was authorized by a power of attorney from the vendor tò convey, that " it recites the production of the power, and is evidence it was produced;" but that it was not evidence of the due execution of that power, " the more especially as it was execu-

ted in this country, which was then foreign to the country wherein the conveyance was made," citing two Louisiana cases in support of this view. The court further remarked : " There should have been some evidence of the execution of the power or its genuineness; but it may be a question whether, under the particular circumstances of this case, it may not be presumed ;" that " a power to execute a deed will in many cases be presumed;" that "in most cases where a deed would be evidence, as an ancient deed, without proof of its execution, the power under which it purports to have been executed will be presumed," citing authorities; and that a possession for twenty years or more would justify the presumption of the existence of a power. In that case the following language is used : " A like presumption has been indulged under peculiar circumstances, where possession had not followed the deed, and considerably less than twenty years had elapsed after its execution by the attorney," citing Forman v. Crutcher, 2 A. K. Marsh., 69.

The court further observed that no effort was made by plaintiff to produce the power; no allegation or proof of its loss or destruction; no evidence offered of its existence, beyond the mere recitals in the deed from the asserted attorney to plaintiff; and that although the notorious pendency of the suit against McGrew since 1843, more than ten years, and the possession of the land by McGrew, together with the implied acquiesence arising from the silence of Ruez, the original owner, would be sufficient as *prima facie* evidence of the existence of the power; but that it could " scarcely be doubted that by the use of proper diligence they might have obtained some evidence conducing to prove its existence;" that some evidence of its genuineness ought to have been produced. The court said, as the plaintiffs could bring their second action, " and there is reason to believe the desired evidence can be obtained," on a second trial affirmed the judgment. In the case of

Dailey *et al. v.* Starr, 26 Tex., 562, the court said: "It seems to be well settled, however, that the power to execute a deed will in many cases be presumed," and cite the case of Watrous *v.* McGrew, 16 Tex., 506.

In commenting on the facts of the case, Justice Bell attached great importance to the fact that Bean, who sold the land to Thorn and Pinckney, acted as the attorney of Anarjo in obtaining the concession; that the land was in possession of Thorn and Pinckney; that they held possession of the title papers from 1839, and that Anarjo did not set up any claim, neither did any person as his representative, until the sale to plaintiffs in 1856, by the heir of Anarjo.

There was no other evidence save the witness Belt, who stated that he "heard Anarjo say he had given Bean a power of attorney, authorizing him to get title to the land and sell it; and that he heard Anarjo say that he had sold the land to Bean, and that Bean had paid him for it. The court affirmed the judgment on the presumed existence of a power in Bean.

In the case of Hooper *v.* Hall, 35 Tex., 83, suing for the league of land mentioned in the power from the Fullers to Frost Thorn, as the league granted to Hiram Blossom, and which had been conveyed by Blossom directly to Watson in 1842, and from Watson and Littlefield to plaintiff, an outstanding title was pleaded by the defendant as existing in A. Sidney Johnson, by reason of the sale from Thorn to Brookfield in 1835, and subsequent conveyance from Brookfield to Johnson. The plaintiff in that case objected to the evidence of outstanding title in Johnson, basing the objection on the absence of the power to Fuller. It was overruled by the district judge, and this court affirmed the judgment, holding that the agency of Fuller in obtaining the grant for Blossom, and the recitals in the act of substitution of Thorn before Louis Ruez, was sufficient evidence of the execution and existence of the power from

Blossom to E. M. Fuller.   It will be borne in mind that the power in that case, the existence of which was held by this court as sufficiently shown, was of like character, and in the same instrument as the one from Harper to Fuller, relied on by appellants in this case.

From a review of the cases cited, we are led to the conclusion that in this case the presumptive evidence is stronger, independent of the direct evidence of Ruez.

The evidence in this case shows that one of the Fullers, who joined in the power to Thorn, was the original attorney, and petitioned for the grant, as in the case of Dailey v. Starr.   As in that case, and in Watrous v. McGrew, the original grantee has acquiesced in the sale and adverse claim to his rights, and for a much longer period.   The title to this land has been claimed adverse to Harper by recorded deed for thirty-eight years.   It has been claimed by the original plaintiff and the appellants in this suit for more than twenty-eight years.   It has been in possession, use, and occupation, hostile to any right of Harper's, and before the institution of this suit to the present time; and, although held by some of the defendants, it is as adverse as if held by plaintiffs.   This suit has enlisted the abilities of the largest portion of the most prominent men in this section of the Republic and State.   It has been on appeal before this court three years past, and yet, with this long-continued claim, adverse possession, and protracted litigagation, neither Harper nor his heirs or representatives have set up any claim to this property.   All of these facts, with the evidence of Ruez already alluded to, show the fullness of proof on part of plaintiffs, and the manifest error in the finding of the jury on this the principal issue in the case. The defense, however, read in evidence certified copies of deed from Henry Harper for the land in suit, dated September, 1838, to B. F. Fuller, one of the persons who executed the power to Frost Thorn in 1835; a deed from Fuller to E. O. Le Grand, and a deed from the latter to

M. Cartwright.    There is nothing in the evidence to show any claim to the land by the persons to whom these deeds were executed, beyond what appears to be a series of simulated transfer of this league.    The existence of the registered copy of what purports to be a deed from Harper to B. F. Fuller may explain the denial of his identity with the Fuller who joined in the execution of the power to Thorn, and may perhaps explain the disappearance of Harper's power of attorney from the archives at Nacogdoches.

The verdict of the jury was unsupported by any evidence worthy of notice, and was in direct opposition to the evidence on this issue.

The question on issue presented to the jury, as follows: " Is said land situated within the twenty border leagues?" was found by the jury in the affirmative.    This is not raised in the brief of counsel.    It was, however, relied on and repeated in the answers of defendants, and was evidently considered by the presiding judge as a material question, and, for aught we can discover, may have influenced the court in rendering judgment for defendants.    This issue was improperly presented to the jury.    The question of the validity of similar concessions to the one in suit within the land known as the border leagues is not an open question.    It was decided in the case of Blount v. Webster, 16 Tex., 616.

The finding of the jury on the issues presented respecting an outstanding title, by reason of the sale under executions by the sheriff, and purchase by G. W. Gresham, on the 5th of February, 1853, presents for our consideration the omission on the part of the judge to present this question in its proper light for the action of the jury.    No aid was furnished by the charge to enable the jury to determine the true character of this pretended outstanding title.    The direction was to find in the affirmative or negative several distinct facts.    When this case was before this

court on appeal by appellants, (see Johnston *v.* Shaw, 33 Tex., 585,) the only question presented for revision was the verdict and judgment on this plea of outstanding title in Gresham, (the jury having, in that trial, found in favor of the existence of the power from Harper to Fuller.) The judgment of the District Court was reversed and the cause remanded. We adopt all that portion of the opinion relative to the irregularity in the issuance of the executions: the voidable character of the sale by the sheriff, the gross inadequacy of price for which it was sold, the suspicious circumstances attending the purchase by Gresham, and his transfer to James F. Timmins and other defendants. The facts stated in the report of the case and in the opinion of the court are again presented in the transcript of the record before us. A league of land, shown to be intrinsically worth from thirteen to fifteen thousand dollars, is levied on by virtue of four executions issued on dormant judgments, three of those judgments showing on their face (no matter what the facts on which these judgments may have been rendered) that they were not judgments rendered against A. Sidney Johnson, the fourth and only judgment against him being only for the insignificant sum of six dollars and twenty-five cents, with funds more than sufficient for the payment of this debt, paid by one of his attorneys to the sheriff, and the entire league of land, worth from three to three and a half dollars per acre, is sold for forty dollars, less than one cent an acre. The defendants seek to avoid the force of these facts by showing that the plaintiff's title was considered worthless by reason of the defendants' opposition to his claim, the defendants showing no claim in themselves beyond that of mere trespassers.

If sales of this character could be held valid, then it might be truly said that the officers of court, under the pretense of collecting costs of court due them, can divest the citizen of vast interests, or, as in this, without lawful

authority, under color of law, sweep away from the owner a large estate by a sale for such an insignificant amount as to shock the sense of right and outrage the moral sense of every honest man.   The plea that, by the sale to Gresham and the purchase by Timmins and others, they are inno- cent purchasers or third parties, is negatived by the testi- mony of Gresham's widow.   The time of sale to them and the price paid and evident concert between Gresham and the vendees, all combine to place this transaction or sale outside the pale of fair dealing.   It is one of that class of cases that comes with a forbidden aspect before a court of justice.

For the errors in the charge of the court and finding of the jury, the judgment is reversed and the cause is re- manded.

REVERSED AND REMANDED.

[Justice MOORE did not sit in this case.]