| 50 | 521 |
|----|-----|
| 85 | 574 |

</div>

ALBERT SIDNEY JOHNSON'S ADMINISTRATOR v. B. C. & J. F. TIMMONS ET AL.

1. ANCIENT DEED — POWER PRESUMED.— In most cases where an instrument would be admissible in evidence as an ancient deed without proof of its execution, the power under which it purports to have been executed, will be presumed.
2. SAME—PRESUMPTION OF LAW— POSSESSION.— It seems that the presumption of the due execution of an ancient deed is one of law, and that proof of possession under it is not indispensable to its admission in evidence.
3. SAME.—Facts held sufficient evidence of an ancient document.
4. CHARGE MUST BE APPLICABLE TO THE FACTS.—It is the duty of the court to instruct the jury as to the law upon particular facts in

evidence, and to give as law the presumptions of law upon facts in evidence.

5. PRESUMPTIONS OF LAW—RECITALS.—See facts where it was held error not to instruct upon the presumption of law, upon the recital of a power of attorney in an instrument in evidence and over thirty years of age. The jury should have been told that such recital was a presumption upon which they could act as to the existence of the power of attorney so recited.

6. APPROVED.—Johnson v. Shaw, 41 Tex., 438, approved.

7. OUTSTANDING EQUITY.—In trespass to try title an outstanding equity cannot be pleaded in defense, unless the defendant is shown to be connected with it.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty.

Albert Sidney Johnson brought an action of trespass to try title October 10, 1845, in the District Court of Harrison county, against Durshee Shaw. The representatives of Timmons (Shaw's landlord) defended.

Vanzant was attorney for plaintiff at the institution of the suit.

E. Clark, for defendant, filed the answer December 19, 1845; November 18, 1847, defendant amended; Rusk & Henderson and Ardrey & Payne, attorneys.

August 17, 1859, plaintiff amended and filed supplemental petition; George Lane, Clough & Vanzandt, and Ochiltree & Davis, attorneys.

September 1, 1859, defendant amended; Hill & Hill, attorneys.

April 6, 1862, A. Sidney Johnson fell at Shiloh.

March 26, 1866, his death was suggested of record, and at the fall term thereafter his administrator, Jesse H. Curtin, made himself party plaintiff.

June 1, 1868, plaintiff further amended; G. Lane, attorney.

June 2, 1868, defendants also amended their pleadings; Pope, Steadman & Pope, Hall & Turner, and Poag & McKay, attorneys.

In 1868 a trial was had, and judgment for defendants; S. P. Donley representing plaintiff.

This case was reversed, (33 Tex., 587,) Walker delivering the opinion.

July, 1873, William Preston Johnson and other heirs became party plaintiffs.

A second trial resulted in favor of defendants. This judgment was reversed, (41 Tex., 430,) Justice Devine delivering the opinion.

This is the third appeal, and the facts are sufficiently given in the opinion.

*George Lane,* for appellants.—The appellants claim title to the land by virtue of a grant to Henry Harper for one league of land, issued by George W. Smythe, commissioner, on the 13th day of October, 1835; power of attorney from Harper to E. M. Fuller; power of attorney from Franklin Fuller and E. M. Fuller to Frost Thorne, authorizing him to sell ten leagues of land, one of which is the Harper league; conveyance by Thorne to Brookfield, and deed from Brookfield to Johnson.

The defense relied on is, (1) that no power from Harper to Fuller was produced; (2) that the land was sold at sheriff's sale, and defendants became the purchasers, through Gresham; (3) that the agreement between Duncan, Hancock, Ogden, and Johnson shows an outstanding title.

The first two of these subjects are brought to the attention of the court by charges asked by the appellants and refused. The court was asked by appellants to instruct the jury, that if they found, that in the power made to Thorne by E. M. Fuller, before Lewis Rueg, primary judge, it was recited that it was done by virtue of a power from Harper, and if they found that the power from Fuller to Thorne was thirty years old, it was a presumption of law that Harper made the power to Fuller. The power from Fuller to Thorne is signed by Franklin Fuller, E. M. Fuller, and Rueg, primary judge, and

was executed 14th October, 1835. Rueg says that the extra-judicial powers from the original parties to the Fullers were presented to him.

The custody of the instrument could not be impeached, as it remained an archive of the proper office, and still continues so. That the judge should have given this instruction, reference is made to Phillips on Evidence, (1st. Am. ed., from 2d. Lond.,) 348 and note; Doe *ex dem.* Clinton *et al. v.* Phelps, 9 Johns., 169; Doe *v.* Campbell, 10 Johns., 475; Daily *v.* Starr, 26 Tex., 562; Watrous *v.* McGrew, 16 Tex., 506. The judge instructing the jury tells them, in regard to the power from Harper to Fuller, to decide, from all the evidence, by the impression made on their minds. He should have instructed the jury as to the weight of written evidence; he ought to have instructed them as to the effect of an instrument thirty years old, and the effect of its being recited in that instrument that it was made by virtue of a power to do so. That it was the duty of the judge to instruct as to the weight of such written evidence, see 11 Tex., 593; 20 Tex., 299; Williams *v.* Davidson, 43 Tex., 39. It may be said that the judge should not have given the charge in the exact language in which it was asked, and if he should not give it there was no error in the refusal; but it may be said now, that when the instruction was important and the judge had failed to instruct on the subject any instruction asked which would have presented the subject, it will be error in the judge if an instruction touching the subject is not given.

II. As to the sale by execution, it will be seen by the sheriff's deed that a sale of the land in controversy took place in 1853 on judgments of the District Court of Harrison county, in cases Nos. 1336, 1337, 1338, and 1339. Those judgments are shown to be in the cases of Johnson *v.* The Republic of Texas, the first of which is against the plaintiff, and consequently against Johnson. Those judgments are for costs, and the executions show they were for $6.25 each. The sheriff's deed shows that the levy and sale were by virtue of

all of them, and it is suggested that a fair sale cannot be had when a man's property is taken by virtue of a judgment for a small amount, and various other judgments that are not against him; and the judge was asked by appellants to instruct the jury that if they found that but one of the judgments was against Johnson and the sale by virtue of all, that it vested no title. And, also, the judge was asked by appellants to instruct the jury as above, and if they further found that James F. Timmons induced the clerk to issue the executions, and induced Gresham to bid for him and others, the heirs of Thomas Timmons, then no title would pass. This last instruction should certainly have been given. Timmons was a party to the suit, and was a beneficiary, and should be held to a strict accountability for his conduct in inducing a sale unfair and irregular. As to the mere sale under executions, some of which are good and others void, it is stated in the case of Towns *v.* Harris, 13 Tex., 507, that a joint levy and sale of land under several executions, "if any one of them would give a valid title it would sustain the title of appellant." The case was not decided by the application of this principle. One of the judgments was void and there were several good ones, but the case was decided against the appellant, who was the purchaser, on the laches as to the executions and statute of limitations. The opposite doctrine, that a joint sale under executions, one of which was good and the others bad, passes no title, is supported in the case of Brown *v.* McKay, 16 Ind., 484. There are other points raised by the bill of exceptions and assigned as error, to which the attention of the court is invited.

III. The effect of the agreement entered into between Duncan, Hancock, Ogden, and Johnson, on the — day of ——, A. D. 1838, will now be considered.

It appears from this agreement that those parties had purchased four leagues of land; that they divided them by lot; that the title to the whole was to be conveyed to Johnson; that he was to manage and control the whole, and sell and

convey the same and bring suit, and the respective parties were to be responsible for costs, and, on settlement, Johnson was to convey to them; according to the agreement, Brookfield, conveyed to Johnson by deed, which vested title in Johnson. The suit was certainly well brought by Johnson in 1845, because he had the title, subject to the equities between him and those who entered into the agreement. When Johnson died the title descended to his heirs and administrator subject to those equities. The court cannot know the state of those equities or what subsequent agreement may exist between the parties. Johnson was not to convey till he was reimbursed for costs and expenses. Those parties are not complaining. They no doubt stood side by side with Johnson in the prosecution of the suits while he lived, and are still doing so as to his heirs and administrator. The defendants propose to plead the title of the one against the other, and defeat the rights of both. They propose that this agreement is an outstanding title. An equity cannot be plead as an outstanding title, and unless the defendants connect themselves with the equity they have no interest in it. This subject is fully discussed in the case of Burleson v. Burleson, 28 Tex., 410.

*R. S. Hightower*, for appellees.

I. Plaintiff's title depends upon the execution and delivery of a power of attorney by Henry Harper to E. M. Fuller to sell the land in controversy. No such power was produced in evidence, nor is there any direct evidence that such power ever existed. It is sought to deduce the conclusion of its execution and delivery from the evidence of Louis Rueg. It is true that, in giving an irresponsive answer to an interrogatory propounded to him, he says: "I am enabled to state that the said Franklin Fuller and E. M. Fuller had an irrevocable power of attorney," &c.; but in answer to the fourth interrogatory, calling his attention directly to this point and intended and calculated to draw from him whatever informa-

tion or knowledge he possessed as to the existence of a power of attorney from Harper to Fuller, he says he has no recollection of being present at the execution of such a power, but that such a power was before him at the time the Fullers executed their power to Thorne. Nowhere in his evidence does Rueg testify to the authenticity, genuineness, or execution of any paper that may have been laid before him as the act of Harper.

But it may be said that the recital in the power from the Fullers to Thorne of the existence of a power from Harper to them is evidence of the same. It may, says this court in 16 Texas, 506, be evidence that such a paper was produced, but not of its due execution. There must be corroborative facts and circumstances by which such fact, with others aiding it, raises a disputable presumption of the due execution of the paper.

Are there not facts arrayed in this case in opposition to the presumptions or conclusions that might be drawn in favor of appellants' case from the aforesaid facts, such as would authorize the jury, in the exercise of their peculiar province in weighing the testimony, to find against appellants upon this point? The indefinite character of Rueg's evidence, the utter inability of plaintiff to produce one particle of direct evidence upon this point as to the existence of a power from Harper, except, first, by the recitals in the power from the Fullers to Thorne, which it is very natural to suppose the Fullers would have procured to be done, even had they been perpetrating a fraud; and, secondly, by the evidence of Rueg, which evidence, had it been more direct and positive than it is, should have weighed but little against the slightest opposing facts; for Rueg was, at the time he gave this evidence, a citizen of France, not amenable to the laws of this country had he sworn to that which was false, under no restraint or fear of pains or penalties for falsehood, except the sense of moral obligation he might have felt himself under to tell the truth, of which the jury had no evidence whatever, except

that he had formally taken an oath as witness which, prac-
tically, was an empty ceremony.   The plaintiffs are unable
to find any one who has knowledge favorable to his case
upon this point.  Even Franklin Fuller, one of the immediate
actors in the matter, knows nothing of this power of attorney.
This suit was instituted in 1845.   Sufficient time has elapsed
to enable plaintiff to probe every source and avenue for
information.   During the time, Rueg himself returned from
France to this country; was here in 1859 or 1860, on business
connected with the sale of lands, and about the very time
that these interrogatories were propounded to him.  If plain-
tiffs, admitting their inability to furnish the ordinary evidence
of facts, call upon courts to indulge presumptions from the
age of their cause or its facts, it should be an antiquity whose
white locks are not tinged by even the shadow of fraud or
unfairness.   If the jury found for defendants upon the ques-
tion of the existence or non-existence of the power from Har-
per to Fuller, it certainty cannot be said that they found
without evidence, or against the weight of evidence.

II. Defendants relied, also, upon the sheriff's deed to
Gresham and conveyances from Gresham.   There was a
valid judgment against Johnson.   An execution issued, per-
haps upon a dormant judgment, but only voidable by a
proper action to avoid the sale under it between the proper
parties and by proof of facts which would justify its being
declared void.  (Sydnor *v.* Roberts, 13 Tex., 598; Hancock
*v.* Metz, 15 Tex., 209.)   But it is said that judgment had
been paid before the sale; and, as proof of this, plaintiffs
show some money previously paid on liability of Johnson for
cost.  There was no special application of this money ordered
at its payment, and the facts show that Johnson's liabilities for
costs were to an amount that largely exceeded the sum of the
amounts paid and the costs upon the one judgment against
Johnson.

Again, it is said there was fraud in that sale,—a combi-
nation between the officers and defendants to have this sale

ostensibly for costs, but really to defraud Johnson of his land. The mode of sale does not seem, from the evidence, to have been at all different from any other sheriff's sale fairly made. There was a valid judgment; an execution; unpaid costs; the right of the officers to enforce collection of their costs; a sale, made with all the publicity of notice that the law has said was sufficient; notice given in the town in which plaintiff's representatives and attorneys lived, and sale had, on the first Tuesday in the month, at the court-house door. There was no evidence that defendants procured the issuance of execution on the sale, unless the fact that the sheriff thinks he saw Gresham and one of the defendants at the sale, and talking together in the ordinary way, is evidence of a conspiracy to defraud. L. R. Ford, the clerk, is shown to have been an honorable man; held in good esteem as a man of integrity; not likely to lend himself to such a great conspiracy to cheat and defraud. Nothing is said as showing complicity of any other officer in the "plot," but it is said the inadequacy of price shows the fraud. That, without additional circumstances, is not sufficient. (Allen *v.* Stephanes, 18 Tex., 658.) Incumbrances on the land, defects or supposed defects of title, and litigation as to the land, may have been, and no doubt were, the causes of its bringing no more at the sheriff's sale; and they should have been, and were, considered by the jury in deciding upon the question of fraud. (Baker *v.* Clepper, 26 Tex., 634.)

III. Defendants proved, by the written agreement admitted in evidence between George Hancock, Edward Ogden, Garrett Duncan, and A. Sidney Johnson, dated in 1838, and the addenda thereto, dated 1860, that Johnson never was the owner of the Harper league; that eight years before this suit was brought Hancock and Ogden became the owners absolutely of that league of land, and that Johnson had no authority after that with respect to it, except as the agent of said Ogden and Hancock to sell it and turn over the proceeds to them. This power to sell was not coupled with an

interest in the land, and therefore all power of Johnson over, or right concerning the land was revoked by his death; and no power to execute a trust confided to the personal capacity, judgment, and integrity of Johnson could descend to his administrator, who, if he could exercise such power at all, could only do so under the probate laws of the State.

Again, it has been decided by this court that a power given a party to sell land, does not invest him with authority to maintain a suit of trespass to try title to it. Therefore no power vested in Johnson, in his lifetime even, to maintain this suit.

But it may be said that this latter proposition as to the Ogden and Hancock title was not considered by the jury, because there was no charge given them by the court thereon. It was admitted as evidence to the jury, and not withdrawn from them; and being allowed to go to them as evidence, we can but presume that they did consider it,—that it influenced them in their verdict. There was no denial of the authenticity of these instruments; and if the jury have not misconceived the application of those facts to the law, and have attached the legal consequence of their existence by a verdict for defendants, it is submitted that this court will not disturb their verdict.

*Drury Field,* also for appellees.—This cause has been before this court twice before this, and the judgment of the lower court each time reversed upon the insufficiency of the evidence in respect to the outstanding title set up by defendants, derived to defendants through George W. Gresham at sheriff's sale. The court, on former consideration and adjudication of this cause, held the evidence in support of defendants' title obtained from Gresham to be deficient. (33 Tex., 585; 41 Tex., 428.) As to the evidence in support of the title of defendants derived from Gresham, it involved an issue of fact which has now been three times sustained in favor of that title by three different verdicts. The juries impanelled to

try this cause sustained that title. The court should respect their finding, and permit the judgment to stand. This view is supported by analogy to the case where not more than two new trials shall be awarded in any cause, unless the jury err in matter of law. In support of the legality of the Gresham title, we respectfully refer the court to the case of Boggess *v.* Howard, 40 Tex., 153.

We specially invite the court's attention to the evidence of outstanding title in Hancock, which clearly deprives the plaintiffs of all rights to recover in this cause, and plainly demonstrates that the alleged plaintiff owns no interest whatever in the land involved. (Cleveland *v.* Williams, 29 Tex., 213; Stewart *v.* Insall, 9 Tex., 397; Primm *v.* Stewart, 7 Tex., 183; 2 Sugd. on Vend., side p. 693.)

Bonner, Associate Justice.—This is a suit of trespass to try title to the Henry Harper league of land in Harrison county, originally brought by Albert Sidney Johnson against Dushee Shaw.

This is the third time the case has been before this court. (Johnson *v.* Shaw, 33 Tex., 585; Johnson *v.* Shaw, 41 Tex., 428.)

The opinion of Judge Devine on the last appeal contains a full statement of the material facts and issues as there presented. The plaintiffs then and now claim title as follows:

1. Grant to Henry Harper.

2. Power of attorney from him to E. M. Fuller.

3. Power of attorney from E. M. Fuller and Franklin Fuller to Frost Thorne, dated October 14, 1835, in which E. M. Fuller alone claimed to substitute Thorne in his stead as to this league.

4. Deed from Thorne to William Brookfield, date October 14, 1835.

5. Deed from Brookfield to plaintiff Albert Sidney Johnson, date February 10, 1840.

On the last appeal, the defendants, in support of the judgment in their favor, mainly relied on two propositions—

First. That no sufficient evidence was shown of the alleged power of attorney from Henry Harper to E. M. Fuller.

This missing power was recited in the one from Fuller to Thorne, and this recital was supported by the testimony of Louis Rueg, "judge of the first instance," before whom the last-named power was executed, who testified that he then saw and had the same in his possession, and that he afterwards deposited it in his office, from which it was subsequently taken. It was not found on search therefor.

Second. That title to the land in controversy was vested in the defendants, through George W. Gresham, who purchased the same, pending the suit, at an execution sale for costs.

This sale was attacked by the plaintiffs as fraudulent and void, because the executions were issued and sale made at the instance of the defendants on four dormant judgments, one only of which was against the plaintiff, which, it is claimed, had been paid by a deposit of money for that purpose; and because the sale was for a grossly inadequate price.

Both these issues were elaborately considered on the last appeal, and the case, so far as they are involved, virtually decided in favor of the plaintiffs, unless new and material evidence had been found. After a full review and application of the decision of this and other courts upon the question of the presumption which the law, under the circumstances, would raise as to the execution and existence of the power of attorney from Harper to Fuller, by the recital of it in the subsequent one from Fuller to Thorne, the learned judge says: "From a review of the cases cited, we are led to the conclusion that in this case the presumptive evidence is stronger, independent of the direct evidence of Rueg." (41 Tex., 436.)

Upon the second question, the validity of the execution sale to Gresham, he says: "If sales of this character could be held valid, then it might be truly said that the officers of

the court, under the pretense of collecting costs of court due them, can divest the citizen of vast interests, or, as in this, without lawful authority, under color of law, sweep away from the owner a large estate by a sale for such an insignificant amount as to shock the moral sense of every honest man. * * * It is one of that class of cases that comes with a forbidden aspect before a court of justice." (41 Tex., 438.)

On the last trial another verdict was rendered for the defendants, and the case as it again comes before us, presents the same two questions above stated, and an additional one, upon which, though testimony was introduced, no instructions seem to have been given by the court to the jury.

In this additional issue the defendants set up an outstanding title in George Hancock and Edward Ogden, and in support of it introduced an agreement dated October 11, 1858, and an addendum thereto dated January 6, 1860, between these two parties and George Duncan and the plaintiff Albert Sidney Johnson, by which the league of land in controversy and three others were partitioned between them, and the Harper league allotted to Hancock and Ogden. The legal title, however, to all of them, was conveyed thereby to the plaintiff, with express power to perfect the titles, and to sell, dispose of, and manage the same "exactly as if the property was all his own," and in which he bound himself, his heirs, &c., to account with and pay over to the other parties the full proceeds which he or his representatives may have received, after reimbursing himself for costs and expenses.

These two questions, heretofore passed upon in the former appeal, and the additional one now presented, are those mainly embraced in the arguments and briefs of counsel. The action of the court in regard to them is substantially embraced in the assignment of errors, and will be briefly considered in the order named.

1. On the trial below, counsel for plaintiff asked the court to give the jury the following special charge: "That in considering whether Harper executed a power of attorney to E.

M. Fuller, if they find that Fuller executed a power of attorney to Frost Thorne on the 14th of October, 1835, before Louis Rueg, primary judge at Nacogdoches, and if they find that in said power of attorney from Fuller to Thorne it is stated that the power made to Thorne is made by virtue of a power of attorney from Harper, and if they find that said power from Fuller to Thorne is over thirty years old, then it is a presumption of law that said Harper made the power recited in that from Fuller to Thorne."

This special charge was refused, but the court, in the general charge on this question, instructed the jury as follows: "No power of attorney from Henry Harper to E. M. Fuller has been read in evidence before you, and it is for you to determine whether or not such power was given, and in deciding this question you are instructed to consider all the evidence that has been adduced before you on this point, including both that which tends to prove and that which tends to disprove the existence of said power, and to find for or against said power according to the impression made upon your minds by the evidence."

It is a well-established principle, that, in most cases where an instrument would be admissible in evidence as an ancient deed without proof of its execution, the power under which it purports to have been executed will be presumed. (Watrous *v.* McGrew, 16 Tex., 513, and authorities cited; Dailey *v.* Starr, 26 Tex., 562; Hooper *v.* Hall, 35 Tex., 82; Veramendi *v.* Hutchins, 48 Tex., 531.)

In the case of Hooper *v.* Hall, 35 Tex., 82, the recitals in this identical power of attorney to Frost Thorne were held sufficient evidence of the execution and existence of the power from Blossom to E. M. Fuller to one of the leagues therein mentioned.

Mr. Greenleaf considers the question of the presumption of the due execution of an ancient deed as one of law. (1 Greenl. Ev., sec. 21.)

He further says that the weight of authority is against the

proposition that proof of possession is indispensable to the admission of such deed in evidence. (1 Greenl. Ev., secs. 21, 144, and note 1.)

The circumstances of this case; the continued and persistent litigation by the plaintiffs in support of their claim against the possession of the defendants; the fact that no adverse claim seems ever to have been made by Harper or his representatives, in connection with the testimony of Rueg, furnished such corroborative evidence of the execution and existence of said power as to call forth from the learned and experienced judge who delivered the opinion in this case on the former appeal the following strong expression: " All these facts, with the evidence of Rueg already alluded to, show the fullness of proof on the part of the plaintiffs, and the manifest error in the finding of the jury on this, the principal issue in the case." (41 Tex., 436.)

Presumptive evidence is usually classed under two general divisions—presumptions of law and presumptions of fact.

The first class embraces those fixed legal rules deduced from the general results which usually follow the connection between certain facts, and is the mode by which the law defines the nature and amount or weight of evidence, either conclusive or *prima facie*, necessary to establish a given proposition.

The second class embraces those mere natural arguments or inferences which belong equally to any and every subject-matter.

Presumptions of law, to explain which devolves upon the court, differ in this essential respect from presumptions of fact, which pertain exclusively to the jury,—the former are reduced to fixed rules and constitute a branch of the particular system of jurisprudence to which they belong; the latter are merely those natural promptings which are derived wholly and directly from the circumstances of the particular case, without the aid or control of any rule of law, and which are sufficient to satisfy the understandings and consciences

of an ordinary jury. (1 Greenl. Ev., secs. 33, 44.) As to the latter, as well said by the eminent jurist who delivered the opinion in Brown v. The State, 23 Tex., 200, "they are not rules of law, to be obeyed, but of reason, to be considered."

Under our statute it is made the duty of the court in the charge to the jury to decide and instruct them as to the law arising upon the facts. (Paschal's Dig., art. 1464.)

In Brown v. The State, *supra*, it is held that the jury are the exclusive judges of the weight to be given to every part of the testimony, unless some part of it has an artificial importance or a certain degree of weight attached to it by the law. And it is said that "it is the duty of the court to instruct the jury upon those legal presumptions and degrees of weight in particular testimony constituting exceptions to the general rule, not because they may be in consonance with enlightened reason and experience, but because they are prescribed rules of law pertaining to the weight of evidence. So far only is the court required to enlighten the jury upon the weight to be given to the testimony." (23 Tex., 201.)

In Mills v. Walton, 19 Tex., 271, it was held error in the court to refuse to instruct the jury that the law raises a presumption of fraud where the vendor of goods retains possession of them, for which the judgment was reversed.

In Stoever v. Whitman, 6 Binn., 419, where the court below charged the jury that "they might presume a deed if the circumstances of the case would satisfy them that there was reason for such presumption," it was said by Tilghman, Ch. J.: "These expressions are very vague, and rather tend to perplex than to direct the jury. What circumstances will justify the presumption of a deed, I take to be matter of law; and it is the duty of the court to give an opinion whether the fact proved will justify the presumption."

To the same effect is Cockey v. Smith, 3 Har. & J., 20, as cited in note 298 to Phillips on Evidence.

In such cases it is not required that the jury shall be abso-

lutely controlled by these presumptions of law, unless they belong to the class of conclusive presumptions; but they are so far binding upon them as to make a *prima-facie* case upon which they should find, unless the same is satisfactorily rebutted, and for a disregard of which, by their verdict, the court is authorized to set it aside.

We are of the opinion that the court, in view of the special charge asked, should have instructed the jury as to the presumption of law arising upon the recital of the power of attorney from Harper to Fuller, in that from Fuller to Thorne, and more particularly in the light of the former opinion of this court in this case.   The failure to do this was error, which probably influenced the verdict of the jury, for which the case must be reversed.

2. As to the title of the defendants under the execution sale to Gresham.

As before stated, the opinion of this court on the former appeal virtually decides this issue in favor of the plaintiff, and eliminates it from the case, unless new and material testimony had been adduced, which seems not to have been done.

3. The only remaining issue which arises in the record as presented, is the alleged outstanding title in favor of Hancock and Ogden.   This is not adverse to the claim of plaintiff, but consistent with it, and, under the circumstances, essential to its existence.   By the instrument offered in evidence, the legal title to the land was vested in the plaintiff Albert Sidney Johnson, and he bound himself and his representatives to faithfully administer the trust thereby delegated. Neither before nor since his death have the other parties to this agreement contested his right, or the right of his representatives, to carry on this suit.   They would now be estopped from denying this.   But, at most, their right is but an equitable one.   The defendants' possession is in nowise connected with this equity, but adverse to it.   It has been held by this court that in trespass to try title an outstanding equity cannot be pleaded in defense, unless the defendant is shown

to be connected with the same.    (Shields *v.* Hunt, 45 Tex., 428.)

The testimony under this issue should have been withdrawn from the jury, as it was calculated to mislead them and could not avail the defendants.

The institution of this suit reaches back to the days of the Republic.    Those first engaged in it as litigants, attorneys, and judges—the names of some of whom have become illustrious in history—have passed away.    It is left to a succeeding generation to end the litigation commenced by them.    It is much to be desired that a suit so protracted should be finally ended, at least on the third appeal to this court.    But in the light of the former decisions of the case, and in our opinion of the law as above expressed, the ends of justice have not been attained.    As held in Lucketts *v.* Townsend, 3 Tex., 134, the right of a court of last resort to reëxamine questions of law, or to control the verdict of a jury under similar circumstances, even after three or more trials, has always been claimed in this and every other country where the laws have been properly administered.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

[Chief Justice MOORE did not sit in this case.]