No. 5981.

M. W. GARNER ET AL. *v.* M. LASKER ET AL.

1. TRESPASS TO TRY TITLE—COMMON SOURCE.—A void tax deed purporting to evidence a sale of the land in controversy for the non-payment of taxes upon the land, as the property of the owner through whom both parties claim is admissible to show such common source, the defendant claiming under the tax deed.

2. POWER TO SELL—MAY BE PRESUMED AS AN ANCIENT INSTRUMENT.—Generally where a deed would be evidenced as an ancient instrument without proof of its execution the power under which it purports to have been executed will be presumed. (Harrison v. McMurray, supra.)

3. SAME.—Facts held sufficient to support the presumption of a power taken with its age.

APPEAL from Burnet. Tried below before the Hon. W. A. Blackburn.

The facts are stated in the opinion.

*J. G. Cook,* for appellants: 1. The fact that the tax deed was irregular or void as a muniment of defendant's title would not render it inadmissible when offered in evidence by plaintiffs to prove a common source of plaintiffs' and defendants' titles. (Rev. Stats., art. 4802; House v. Stone, 64 Texas, 677; Keys v. Mason, 44 Texas, 140; Paschal v. Acklin, 27 Texas, 192.)

2. The evidence is sufficient to establish conclusively the presumption that H. L. Wiggins acted under competent and legal authority from Robert O. Lusk in conveying the land in controversy to Madison Porter in 1853, and the defendants at the time of their purchase were each affected with actual notice of such authority and of the existence of such conveyance by recitals in their chain of title. (Waters v. McGrew, 16 Texas, 513; Johnson v. Timmons, 50 Texas, 534, 535; Gainer v. Cotton, 49 Texas, 122, 123; Mills v. Herndon, 60 Texas, 353; Bass v. Sevier, 58 Texas, 567; Holmes v. Coryell, 58 Texas, 580; Dailey v. Star, 26 Texas, 562; 1 Greenl. Ev., sec. 15.)

Payment of taxes on wild lands equivalent to possession. (Glasscock v. Hughes, 55 Texas, 476; 5 Pennsylvania State, 492.)

*Ward & Hammond,* for appellees: 1. The tax deed was void—useless for any purpose. (Hatchett v. Connor, 30 Texas, 113; Miller v. Brownson, 50 Texas, 597; House v. Stone, 64 Texas, 683; Keys v. Mason, 44 Texas, 143.)

2. The facts following the alleged deed to Porter were not sufficient to justify the presumption of the power. (Waters v. McGrew, 16 Texas, 513; Daily v. Starr, 26 Texas, 565, 566; Johnson v. Shaw, 41 Texas, 434; Veramendi v. Hutchins, 48 Texas, 552; Johnson·v. Timmons, 50 Texas, 535; Mills v. Herndon, 60 Texas, 357; 2 Whart. Ev., sec. 1353.)

As to failure of owner to pay taxes, see Murphy v. Welder, 58 Texas, 236.

HOBBY, JUDGE. This is an action of trespass to try the title to one thousand two hundred and eighty acres of land, brought by the appellants—plaintiffs in the lower court—against the appellees on the fifth day of April, 1886. The cause was tried by the court without the intervention of a jury, and resulted in a judgment for the appellees—defendants below—from which judgment this appeal is prosecuted. The controlling questions in the case, and upon the decision of which its disposition depends, are presented by the first, second and third assignments of error.

The first assignment is that "the court erred in sustaining the objections of the defendants to the deed offered in evidence by plaintiffs, executed by N. J. Miller, sheriff and collector of Burnet county, to A. R. Johnson for the land in controversy, dated June 26, 1878, recorded May 29, 1879; and erred in holding that said deed was insufficient as a muniment of defendant's chain of title to show that defendants and plaintiffs deraigned their respective title from the same common source."

It appears from the bill of exceptions contained in the record that upon the trial of the cause plaintiffs, for the purpose of establishing the fact that Madison Porter was the common source from whom both defendants and plaintiffs claimed the land in controversy, and for the further purpose of charging defendants with constructive notice of said Porter's title, offered in evidence a tax deed from N. J. Miller, sheriff and collector of Burnet county, to A. R. Johnson, dated June 26, 1878, recorded May 29, 1879, for the land involved in this suit. This deed recited that the land was sold as the property of said Porter, for the non payment of taxes, and referred therein to the

patent from the State to Owens, the conveyance by Owens to Robert O. Lusk, and by Lusk to Porter on the twenty-fourth of September, 1853. It was offered in evidence, in connection with the other deeds admitted from said Johnson to defendants, under whom they claimed.

To the introduction of this deed in evidence for the purposes stated, the defendants objected "because it was void upon its face, and did not convey the land subject to Porter's right of redemption within two years;" and "because it recited that at the time of the levy and sale of the land it was situated in Burnet county, Texas, the title thereto being fully vested in the said A. R. Johnson." These objections were sustained by the court, the deed excluded; plaintiffs excepted, and assign as error the exclusion of the deed when offered for the purposes stated.

It was the object of the act of September 2, 1871 (supplementary to the act to provide for trying titles to land), now incorporated in article 4802 of the Revised Statutes, to prescribe how the fact that the defendant claims from a common source with the plaintiff may be proved *without* giving evidence of title in the defendant. The rule that when parties claim under a common soure it shall not be necessary to trace title beyond that from which they both claim, and that such proof may be made by showing a claim of title to defendant, emanating from and under such common source, is as old as the action itself. (Keys v. Mason, 44 Texas, 142; Calder v. Ramsey, 66 Texas, 219.) One of the well recognized modes in this action by which plaintiff, upon whom the burden rests, may establish his title is by proof that defendant and he claim the land under a common source of title, and that his is the better or superior title under such common source. And if plaintiff succeeds in this mode, it can only be by proof of a claim by defendant under the common source, which in law is no title or a defective title. A void tax deed purporting to divest the common source of title, and which constitutes the basis of defendant's claim, would be an effectual mode of establishing the defendant's claim emanated from such common source without giving evidence of actual title in defendant.

The fact that the deed or instrument constituting defendant's claim to the land may be defective or void in the sense that it does not operate to divest the title out of the common source is

one of the modes in this action by which the plaintiff may succeed when this is followed up by proof of a superior title to plaintiff from the common source. This proof may not conclusively establish plaintiff's right as against the defendant in the action, but it overcomes the presumption of right arising from the latter's possession, and devolves upon him the burthen of disproving the plaintiff's case, or of showing a superior title in himself, as for example that he holds under a title from the sovereignty of the soil older than plaintiff's or title by limitation, or that though he and plaintiff claim under a common source, he, or a third party, has a superior outstanding title to that which they claim from the common source.

The defendant is not precluded from showing that he does not claim title from the common source. But the fact that defendant does not admit or allege that he claims under such source, will not deprive plaintiff of the right to make such proof under the law. (Keys v. Mason, 44 Texas, 142.)

On the trial defendants offered no deeds to the land showing title in them, but evidently relied on the supposed failure of plaintiffs to establish their title by a regular chain of title from the sovereignty of the soil, and their failure, by reason of the exclusion of the Miller conveyance, to show a common source and a superior title therefrom.

The deeds introduced by plaintiffs, in connection with the excluded tax deed from Miller, showed that the land had been sold as the property of Porter for the non payment of taxes for the year 1873; this deed is dated in June, 1878, and conveys the land to Johnson. In May, 1879, Johnson conveys it to C. M. Lusk. Lusk, in August, 1879, reconveys three hundred acres to Johnson, who, in 1882, conveys to the defendants W. A. Adams, Henry Adams and Hubby each one hundred acres.

The remaining nine hundred and eighty acres Lusk, in October, 1881, conveys to Burchard as trustee, who, in October, 1882, conveys to defendant Lasker. Though the instrument from Miller to Johnson may not have conveyed Porter's title, it was admissible for the purpose of showing (when offered by plaintiffs) the *character* of defendants' claim under the common source, and that it constituted no title.

If the deed offered by plaintiffs (for the purpose this was) must be clothed with all the essential elements or parts of a perfect conveyance, and vest title in the defendant or his vendor, to render it admissible in evidence, the result would be that

plaintiff would establish his adversary's right to the land and defeat his own case. We think the court should have admitted the deed or instrument for the purpose of showing that Porter was the common source under which defendants claimed, offered as it was in this case, in connection with the other deeds admitted, to show the character of defendants' chain of title.

Appellants' third assignment of error questions the correctness of the legal conclusion found by the court, to the effect that "Madison Porter had no title to the land in controversy, on account of the want of authority in Wiggins to sell the land as attorney in fact for Robert O. Lusk.'

It is literally true that there was no power of attorney produced on the trial from Lusk to Wiggins authorizing the sale of the particular tract of land involved in the suit. Hence the correctness of this finding turns upon the sufficiency of the corroborative evidence in this case of such agency, to bring it within the class of cases where such power was presumed. The doctrine has been repeatedly recognized, in this and other States, that in most cases where a deed would be evidence as an ancient instrument, without proof of its execution, the power under which it purports to have been executed will be presumed. (Watrous v. McGrew, 16 Texas, 513; Veremendi v. Hutchins, 48 Texas, 552.) So in Dailey v. Starr, 26 Texas, 566, it was said: "It seems well settled that the power to execute a deed will in many cases be presumed."

So, too, a like presumption has been indulged under particlar circumstances, where possession had not followed the deed, and considerably less than twenty years had elapsed after its execution by the attorney. (Forman v. Gutcher, 2 A. K. Marshall; Johnson v. Shaw, 41 Texas, 433.) The weight of authority is against the principle that possession is indispensible to its admission in evidence, the reason being that possession is but a corroborative circumstance. (1 Greenl. Ev., secs. 145, 21; Stroud v. Springfield, 28 Texas, 664; Holmes v. Coryell, 58 Texas, 688.) And if possession was necessary, it has been strongly intimated, if not decided, that the payment of taxes upon wild land has been received as equivalent to proof of possession in connection with such deeds. (Glasscock v. Hughes, 55 Texas, 476.) The regular payment of taxes upon the land involved in this suit by Porter from 1853 to 1873, is abundantly proven. His agents, Spence & Magill, of Austin, corresponded

wi h Porter during his life time advising him when, and what amount of taxes were due upon the land.

In the case of Dailey et al. v. Starr, 26 Texas, 562 (cited in Johnson v. Shaw, 41 Texas, 435) much importance was attached to the fact that Bean, who sold the land as attorney of Anarjo, acted as his attorney in obtaining the concession, that the pur-chasers had possession of the title papers; that Anarjo set up no claim to the land, nor his representative until the sale to plaintiffs by an heir of Anarjo in 1856.

In the case of Johnson v. Timmons, 50 Texas, 532, and in Hooper v. Hall, 35 Texas, 83, a like importance was attached to facts and circumstances of a similar character, and the miss-ing power from Harper to Fuller was presumed from a recital of it in the subsequent one from Fuller to Thorne. In the cases cited, after a full review and application of the decisions of this and other courts, upon the question of the presumption which the law under the circumstances would raise, as to the execution and existence of such a power, it was held in each of these cases that the facts and circumstances authorized such presumption.

In the case under consideration, the deed from Wiggins as attorney for Robert O. Lusk, was introduced as an ancient in-strument, being more than thirty years at the time both of the institution of this suit and the trial. It was not impeached by affidavit, nor was suspicion in any manner cast upon it. It was proven beyond the strict rule of the common law. Dech-ard, Jr., who was a subscribing witness, and the only party to it surviving, identified it as the instrument drawn by him for the parties in September, 1853, in Winchester, Tennessee, when he was practicing law. (Gainer v. Cotton, 49 Texas, 117.) That Lusk reposed sufficient confidence in Wiggins to consti-tute him his attorney or agent for the sale of his lands is mani-fest from the powers of attorney in evidence, from Lusk to Wiggins, authorizing the sale of the Lockey and the Lyle sur-veys in Burnet county, owned by Lusk. In September, 1853, Wiggins was in Winchester, Tennessee, engaged generally in selling lands for Lusk. He had possession of the original pat-ent to Owens, and the deed from Owens to Robert O. Lusk, which, it is recited in his deed to Porter, were by him deliv-ered to Porter, and, as in Dailey v. Starr, 26 Texas, 566, were found in the possession of the purchaser from that date to his death, in 1874.

Porter's regular payment of taxes from the execution of the deed to his death; his employment of and correspondence with agents in Texas with reference to the payment of taxes thereon during that period; the possession of the deed by Dechard, Jr. (on his visit to Texas in November, 1853, to examine the lands sold by Wiggins), presumably for the purpose of registration, it having been recorded in Bell county, Texas, in November, 1853, and the devise of this land by Porter to plaintiffs, were, in our opinion, unmistakable assertions and acts of claim to the land by Porter. The failure of the principal, in the cases cited, to assert any claim to the land has been held to be a significant fact.

In this case Robert Lusk, who resided in Leon county, Texas, acquiesced in the sale by Wiggins as attorney to Porter, from September, 1853, to his death in Leon county in 1875. There is no evidence of any payment of taxes or any character of claim by Lusk or his heirs. Porter's title was never questioned until the plaintiffs Henderson and Petty, to whom it had been devised, visited Texas in 1874, shortly after Porter's death, bringing with them the title papers found in Porter's custody, and who, upon conference with Johnson (A. R.) and Hammond, the former being the purchaser under the tax deed, were advised that Porter's title was defective by reason of the fact that there was no power of attorney from Lusk to Wiggins, and that Porter's deed had not been recorded in Burnet county. These muniments of title were deposited by these plaintiffs with Johnson and Hammond, and while so deposited, Johnson becomes the purchaser in 1878 at the sale of the land for the non payment of taxes by Porter for the year 1873.

We are of opinion that all the facts and circumstances disclosed by the record brings this case within the rule applied in the cases cited, and that they authorized the presumption of the power in Wiggins to convey the land as attorney for Lusk to Porter.

If this be correct, the court having found, and properly, that plaintiffs' title from Madison Porter was perfect, the judgment should have been for plaintiffs.

We are of opinion, for the reasons above stated, that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted October 16, 1888.

STAYTON,
*Chief Justice.*