## SOUTHLAND LIFE INS. CO. v. WHITE.
### No. 10909.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 19, 1941.

Rehearing Denied April 2, 1941.

George E. Seay, and Malone, Lipscomb, White & Seay, all of Dallas, for appellant.

Herbert Oliver, of San Antonio, for appellee.

NORVELL, Justice.

This is an action brought for the recovery of a real estate broker's commission by appellee, R. N. White, against appellant, Southland Life Insurance Company. Judgment in the sum of $1,951.67 was rendered for White upon a special issue jury verdict.

The appellant presents its case here in a typewritten brief of 188 pages submitting 54 propositions of law, based upon 59 assignments of error. Appellee's reply brief is, of course, correspondingly lengthy. We have a total of 311 pages of typewritten briefs to assist us in determining questions arising out of a 224 page statement of facts. Recently, Judge Alexander has

written concerning the proper preparation of a case for submission to a Court of Civil Appeals, and what was said by him in Lang v. Harwood, Tex.Civ.App., 145 S.W.2d 945, is pertinent to this case.

Appellee pleaded that "within the year 1938," the Southland Life Insurance Company listed with him the property here involved, and promised to pay him a 5% commission upon the sale price, which was placed at "about $40,000." The petition contained no claim for compensation under a quantum meruit theory.

Special Issues Nos. 1 to 4, inclusive, and the jury's answers thereto, are as follows:

(1) Do you find from a preponderance of the evidence, if any, that any officer or agent of the defendant Company during the year 1938 employed the plaintiff, R. N. White, to sell the Kearny property for the Southland Life Insurance Company? Answer "Yes" or "No."

We, the jury, answer: Yes.

If you have answered the foregoing question "Yes," and not otherwise, then answer the following question:

(2) Do you find from a preponderance of the evidence, if any, that such officer or agent had authority to so employ the plaintiff to sell the Kearny property for the Southland Life Insurance Company? Answer "Yes" or "No."

We, the jury, answer: Yes.

If you have answered the foregoing question "Yes," and not otherwise, then answer the following question:

(3) Do you find from a preponderance of the evidence, if any, that such officer or agent, if any, agreed to pay plaintiff, R. N. White, a commission of five per cent of the sale price of the Kearny property? Answer "Yes" or "No."

We, the jury, answer: Yes.

If you have answered the foregoing question "Yes," and not otherwise, then answer the following question:

(4) Do you find from a preponderance of the evidence, if any, that such officer or agent, if any, was acting within his authority in so agreeing to pay plaintiff said commission, if any? Answer "Yes" or "No."

We, the jury, answer: Yes.

The sale upon which appellee claimed a commission was made by the Southland to J. Erwin on January 11, 1939.

Appellant contends that the jury's answers to the foregoing special issues are without support in the evidence. As sustaining the verdict against this attack, appellee relies upon his own testimony given in the trial court, which in certain particulars was corroborated by his wife. This testimony is not very clear in several respects, but, viewing it in the most favorable light, it appears therefrom that during the year 1937 appellee had at least two conversations with Harry Seay, then president of appellant company. In the first conversation Seay told White that the company desired to sell the Kearny property and agreed to pay him a five per cent commission if he would procure a purchaser for about $40,000. John Phelan, who was not an officer of the insurance company, but an agent in charge of appellant's city property, was present at the time, but White's testimony does not show that Phelan took any part in the conversation which gave rise to the supposed listing contract.

The date of this conversation as fixed by White is every uncertain. It may have been prior to April, 1937, according to one version of his testimony, or in June, according to another. His testimony is further subject to the interpretation that the sale price of about $40,000 was fixed after the date of the conversation wherein White was requested to procure a purchaser. It further seems that about "cotton picking" time, or during the Mexican hunting season, during the year 1937, White had a second conversation with Seay. The record does not show what was said and done upon this occasion, although there was evidently some discussion had concerning the Kearny property. There is no evidence of further conversations with Seay, who was succeeded as president of the appellant company by A. Morgan Duke, on March 8, 1938. John Phelan, however, remained in the employ of the Southland after that date, in the capacity of agent in charge of the company's urban property.

White testified as to certain conversations with Phelan during the year 1938, and here emphasizes particularly an occurrence of December 6th of that year. According to White, Phelan was in San Antonio upon that date and with White inspected various properties owned by the Southland. Phelan attempted to call Erwin over the telephone from White's office but was unable to reach him. Phelan then asked

White to get in touch with Erwin and "see if you can't get him to make an offer on the Kearny property."

From the evidence above set out, three possible theories may be drawn, the validity of which we, of course, do not pass upon at this time, to-wit:

That the Southland made the oral contract declared upon, (a) acting through Harry Seay, its president, (b) acting through Seay and Phelan jointly, and (c) acting through Phelan, its agent having charge of its city properties.

The transactions had with Seay or with Seay and Phelan jointly, all occurred in 1937. The effect, therefore, of inquiring of the jury whether or not the Southland *during the year 1938* employed White, was to submit to the jury the third theory above mentioned. The first two possible theories were not submitted, nor was a possible combination theory submitted, i. e., that Phelan was acting under the prior agreement White had with Seay, and reaffirmed said agreement in all its particulars by the transaction of December 6, 1938. Certainly, the inferences necessary to the support of this theory can not be drawn from the jury's finding above set out without doing violence to the actual language used in the issue, and reading something into the finding which is in fact not there.

By the very terms of special issue No. 1 and its connected issues, particularly No. 3, we are restricted to the inquiry: Did Phelan, as agent of the Southland, employ White to sell the Kearny property and agree to pay him a five per cent commission? This, for the reason that there is no evidence that any other agent or officer of the Southland mentioned or discussed this particular matter with White during the year 1938.

The obvious answer to the question above stated is no. We therefore sustain appellant's assignments and hold that the issues above set out are without support in the evidence. Johnson's Administrator v. Shaw, 41 Tex. 428; National Life & Accident Ins. Co. v. Langston, Tex.Civ.App., 42 S.W.2d 1037; Williams v. Craig, Tex.Civ. App., 252 S.W. 876.

 The contention presented by appellant upon this point does not present a question of variance between the pleadings and proof, as suggested by appellee. Cases holding that immaterial variances may be disregarded in the absence of surprise are not in point. We do not hold that the mere fact that a date given in a special issue varies somewhat from a date fixed by the evidence necessitates the reversal of a case. There is nothing technical about the rule applied here. In this case the date, the year 1938, serves to designate a certain transaction or series of transactions about which inquiry is made. We are not at liberty to disregard the date given nor the resulting designation of events, for the obvious reason that we can not say that the jury in this case so disregarded said date and designation of occurrences. If, however, the date given in the issue be disregarded or considered immaterial, and the issues construed as contemplating and including the transactions had by White with both Seay and Phelan, then such issues are subject to the criticism of appellant in regard to multifariousness.

Our holding above stated necessitates a reversal of the case, and in view of another trial we pretermit discussion of the other matters raised in the briefs filed by the parties.

The judgment of the trial court is reversed and the cause remanded to said court for new trial.