## Thomas, Adm'r, v. Chance and Wife.

There is no doubt that a deed by the wife, of community property, the husband being present, (not at the making of the deed,) and acting as the head of the community, cannot stand alone.

The acts of the wife in disposing of community property, with the assent and authority of the husband, are valid; and the authority of the husband may be either express or implied, previous or subsequent to the act.

Where community property, (real estate,) had stood in the name of the wife, and there was a deed from the wife alone, the husband having secured the purchase money, it was held that the sale was as valid as if the deed had been made by the husband.

Where a contract for the sale of land contained a stipulation that the vendor held by deed from a certain man and his wife, and that they had not conveyed to any one previous to conveying to the vendor, and the further stipulation that if the title did not prove good and hold the land over all claims that might arise, then the consideration, (negroes,) should revert to the vendee, it was held that the latter was the substantive part of the contract, and that a rescission could not be demanded by the vendee, upon proof of a previous sale by the said husband and wife to another, without allegation and proof that such previous sale was not supplanted by a failure of record or actual notice; nor upon proof that the vendor had a deed from the wife only, in form, it being sustained by the implied authority of the husband.

Appeal from Walker. The petition, in substance, alleges that on the sixth of March, 1849, John C. Dodds, the deceased intestate of plaintiff, executed to Lucy Ferris a bill of sale of three negroes, naming them specifically in said bill of sale, the consideration being sixteen hundred dollars, paid in notes of hand on Col. Lewis Goddard, and other considerations not mentioned. Among other matters, it was in said instrument stipulated and agreed between the said Lucy Ferris and the said Dodds, that should the title made by her and E. Ferris to Lewis Goddard, for a certain half league of land, (the same that Trinity city is located on, at the mouth of Red Oak creek on Trinity river,) not prove to be good, and *bona fide*, and hold the same over any and all claims that might arise to said tract of land, then, and in that case, the said negroes,

with their increase and hire, should revert to the said Dodds; otherwise the said bill of sale was to be valid and good, to the said Lucy Ferris.

It is further alleged that the said contract was in fact made with Edward Ferris, in the name of his wife, Lucy Ferris, and that the negroes were delivered to the said Lucy, or in fact, to her husband, at the date of the said instrument.

The petition also alleges that, at the date of the said transaction, his intestate believed, and was induced by the false and fraudulent representations of the said Lewis Goddard and the said Edward Ferris to believe, that Edward Ferris had made, or joined his wife in making, a conveyance to the said Lewis Goddard for the said half league of land, which now, in truth, turns out not to be the case, the said E. Ferris having not conveyed to any one, except one thousand acres of the said half league to one B. F. Wright, on the 31st January, 1848 ; that the title of the said Lucy and E. Ferris has not only proven to be not good, but that there was no title at all from E. Ferris ; and the title from Lucy Ferris to Goddard was not good, because, at the time of its execution, she was a *feme covert*, and her husband, being then alive, did not join her ; and that it was fraudulent and well known so to be, by the said Goddard and Lucy Ferris. It is further averred that a suit has been instituted by B. F. Wright, for the recovery of the said one thousand acres. A copy of his petition was filed as an exhibit ; and the documents filed in said petition, were filed with, and as a part of, the petition. It was also averred that said Goddard sold on the 18th October, 1848, to the said Dodds one half of said half league, for which he executed his deed of that date, which purports to be on a consideration of 1424 dollars ; but the transaction in fact was, that Goddard gave his notes to Ferris for the lands, and Ferris transferred the notes to Dodds for the negroes, except one note, a balance of some 700 dollars, which Dodds lifted from Ferris for Goddard. It is also averred that the said Goddard is insolvent, and that the plaintiff has no other relief except

by a restoration of said negroes. The petition states that Edward Ferris died, shortly after the said bill of sale, and that Dodds departed this life on the 15th June, 1849. There is a prayer that Lucy Ferris be made a party in her own right and also as administratrix of her late husband; that Lewis Goddard also be made a party; that the negroes, their increase and hire be restored to petitioner; that all the sales in regard to said negroes and lands be decreed void, &c., &c. There was subsequently an amendment, by which the plaintiff offered to deliver up the possession of the land. The petition of B. F. Wright, (in the suit to recover the one thousand acres sold him,) and which is filed as an exhibit, recites the facts alleged in the suit of Parker v. Chance and wife, (*ante* 513,) as to the location and clearing out of the league by Francis Slaughter; the assignment of the whole league to Slaughter by Edward Ferris, the husband; and the re-assignment by Slaughter, or his executor, of the one half, to Lucy Ferris, the wife. The deed from Lucy Ferris to Goddard is set forth fully in this petition, and purports to convey the whole of the half league to Goddard. It is signed by Lucy Ferris alone, and she acknowledged, before a Notary Public, that she had freely and willingly executed said deed, and wished not to retract. This deed was executed on the 7th, and was filed for record on the 19th October, 1848. The deed from Edward Ferris to B. F. Wright for the one thousand acres was also set out. It was executed on the 31st of January, 1848, was proven in March and April, 1851; but there is no evidence, that it was ever recorded. The deed from Lewis Goddard and Jane Goddard to Dodds is also fully exhibited. It purports to convey the one half of the half league, deeded to Lewis Goddard from Lucy Ferris, by deed dated October 7th, 1848; was executed on the 18th day of October, 1848, and recorded on the 24th June, 1851.

As the petition, in this case, was dismissed on demurrer, it will not be necessary to notice the pleadings and facts stated by the defendants.

*Yoakum & Branch*, for appellant.

*W. A. Leigh*, for appellees.

HEMPHILL, CH. J.  It has been assumed in the argument for appellees, that the land in controversy was the separate property of the wife Lucy ; and the effect of her conveyance, without joinder by the husband, has been discussed by both parties.  But in the case of Parker, Ex'r, v. Chance and wife, (*ante* 513,) we have decided that this land was community property ; and it is upon this basis, and not the assumption of separate right, that the acts of the parties must be considered, and their legal effect ascertained.

One of the grounds on which the plaintiff claims a rescission of the sale of the negroes, is, that the deed of the land from Lucy Ferris to Goddard was absolutely null and conveyed no title.  The law declares that the community property may be disposed of by the husband only.  A critical examination of this phraseology might lead to the conclusion, that the provision meant nothing more than to give the husband power to dispose of the property without joinder by the wife, and that although she had an equal interest with him in the property, yet that her assent to its alienation should not be necessary to its validity.  But, admitting that the clause vests exclusive power of disposition in the husband, how then stand the rights of the intestate of the plaintiff, on the facts set forth in the record.

There is no doubt, on the supposition of exclusive right in the husband, that a deed by the wife, of community property, the husband being present and acting as the head of the community, cannot stand alone.  The deed from Lucy Ferris to Goddard, considered merely as her own act, without the assent or authority of the husband, express or implied, would not convey title.  But although it may be the exclusive right of the husband, as the acting partner, to control and dispose of the common property, yet he may, expressly or by implica-

tion, invest his wife with all the authority possessed by himself over the community. She is joint owner and has an equal interest with himself, in the property; and her acts (with his assent and authority) in relation to such property, must have equal force with his own. This authority may be given previously to the act or subsequently, either expressly or by implication. In this case, from the plaintiff's allegations it appears, that the contract of sale of the negroes was in fact made with the husband, Edward Ferris, but in the name of the wife Lucy, and that the negroes were in fact delivered to the husband; that these were the consideration for the sale of the land by Lucy Ferris to Goddard; that Goddard's notes for the land were paid by these negroes; that the wife was rather a nominal than a real party in the transaction, the consideration having been paid to, and received by, the husband. If such be the facts in relation to the transactions—and their truth cannot be disputed by the plaintiff—is not the husband, by his acts, effectually estopped from claiming the property as his own or as belonging to the community, and subject to his further control or disposition? By his receipt of the purchase money, he has ratified the sale; and it could never be disputed by him or his heirs. She, at least, is under no disability, and by his acts he must be bound. By these he has imparted equities to the vendee, which will effectually shield his title from any claim of right set up by himself or those claiming under him.

But it may be said, that though, under the circumstances stated, the sale of the land to Goddard is as valid as if made directly by the husband, yet that it should be set aside, a portion of the land having been previously sold to B. F. Wright. The deed to Wright does not appear to have been recorded; and whether his title is good against Goddard and Dodds will depend on their having had notice of the previous sale. If they purchased without actual notice, his deed being unrecorded, they will be protected notwithstanding his priority of title. Whether his title be paramount depends on proof, and is not

shown by averment. In the petition of Wright v. Goddard, it is alleged that the latter had notice of title in Wright at the time of his purchase, but no such averment appears in this petition.

Another ground, set up for relief, is, that at the transfer of the negroes, the intestate of the plaintiff was by the fraudulent representations of Edward Ferris and Goddard, induced to believe that Ferris had joined with his wife Lucy in the conveyance to Goddard. It has been already shown that the intestate was secured in his rights by the conveyance of the wife, ratified as it was by the husband. It is very true that a deed by the husband would be the better assurance. No acts *in pais* are necessary to its validity. No proof of assent, express or implied, of the wife or any one else, could be required. But if the title given be valid in law, and superior to any adversary claim, the fact that it was not the identical title covenanted for by the agreement, would be but slight ground for rescission of sale. The substance of the stipulation in the bill of sale in this case, is, that if the title do not prove good and hold the land over all claims that may arise, then the negroes shall revert to the intestate. For aught that appears on the record, the title of the plaintiff, to the lands, may prove good. The plaintiff's own case, as made out by himself, goes far to establish its validity. There is nothing in his statements, which shows that it is and must be essentially defective and void ; and of course there is no valid ground on which a return of the negroes can be claimed. The property is to revert, only in the event that the title to the land does not prove good. How is this proof to be made ? The appellees, with much force, insist that it must be by judicial proceedings, in which the title is directly in issue; that such is the rational construction of the terms. They are certainly susceptible of this construction, and there is great plausibility in this view of the stipulations. Had the title to Wright been duly recorded, and had the second sale been induced by fraudulent misrepresentations that there had been no previous sale, a rescis-

sion might possibly have been claimed, without the necessity of a prior adjudication or eviction. But the facts of this case are not such as can claim the interposition of a Court of equity, until it becomes manifest that the plaintiff will be disturbed in his rights, or that the title has not proved good. At all events, there was no necessity for precipitate action in this case. A suit to try the title had been commenced by Wright against Goddard. Whether that would conclude the plaintiff, it is not material to inquire. The result would at least have indicated the character of the title ; and if unfavorable, there might have been some pretext for a rescission of the sale. And in the meantime, if there had been grounds of apprehension that the slaves might have been removed, the appellees could have been required, on proper application, to secure their forthcoming, to be restored to plaintiff, should the contingency requiring this ever occur.

But it is said that a fraud was practiced on the intestate of plaintiff, by the representation of Ed. Ferris and Goddard, that Ed. Ferris had joined with his wife in the conveyance, and that in the bill of sale, it was virtually acknowledged that the conveyance to Goddard was made by both husband and wife. This representation, if such were ever made, was false, and in a certain sense may have been fraudulent; but as we have before said, this would be but slight ground for rescission, if the title, actually made to Goddard, was good and valid.

But these allegations are inconsistent with the other facts apparent in the cause. The deed from Goddard and wife to the intestate Dodds, was made less than five months before the bill of sale of the negroes, and in this deed it was expressly recited that the deed under which Goddard claimed was made by Lucy Ferris, and was dated 7th October, 1848. The plaintiffs intestate was, therefore, apprised by the recitals of his own deed, that his vendor was claiming under conveyance from Lucy Ferris alone; nor can he now aver aught to the contrary. He does not allege or pretend, that subsequent to his deed from Goddard and previous to the bill of sale, another

conveyance had been made, signed by both Edward and Lucy Ferris, or that he had been induced to believe such was the fact, or that he had relied upon such conveyance. It is manifest that the deed of the 7th October, 1848, to Goddard, was the one in contemplation of the parties; and this was made by Lucy Ferris alone, and was so stated in the conveyance to Dodds. The recital in the bill of sale, that the deed to Goddard was made by both Edward and Lucy Ferris, may be accounted for, from the fact that Lucy Ferris could not write and of course could not read writing, and that the husband in the mind of the intestate, seems to have been strangely mixed up in the whole transaction; that in fact, at least in the mind of the intestate, the bill of sale was made to, and the negroes received by, the husband, though the name of the wife was used; that he, Dodds, was misled by the fraudulent representations of the husband; that the husband received Goddard's notes for the land, and afterwards transferred them to Dodds, the intestate, and as the bill of sale was written by Dodds, at least it was signed by him alone, it is not very strange that the person, regarded by him as the real vendor, should be imagined as having joined in the conveyance to Goddard, although his own deed from Goddard was proof that the contrary was the fact, and that Lucy Ferris had alone made the conveyance.

Upon all the facts, as presented by the petition, (and it is upon these alone we can act,) we are of opinion that there is no ground for rescission and the relief prayed for in the petition, and that there was no error in sustaining the demurrer.

It is scarcely necessary to observe that in the case of Parker v. Chance and Wife, in which it was held that the half league of land belonged to the community, and that the part unsold to Wright should be inventoried, there were no facts showing that the whole of the half league had been sold, or that such sale was good. The negroes, subject to the right of the intestate, (if the title to the land should prove worthless,) belong to the community, and not the land.

80         Judgment affirmed.