**LEYVA et al. v. RODRIGUEZ et ux.**

No. 11610.

Court of Civil Appeals of Texas.
San Antonio.

May 29, 1946.

Rehearing Denied June 26, 1946.

Oxford, Oxford & Ramsour, of Edinburg, for appellants.

Leroy H. Buss, of Weslaco, for appellees.

NORVELL, Justice.

This is an action in trespass to try title. Plaintiffs below were Adela R. de Leyva and Concepcion Leyva, suing by and through Adela R. de Leyva as next friend. They sought to recover the title and possession of Lots 14 and 15 and the south five feet of Lot 13, in Block 2, of the Stallworth Addition to the City of Weslaco, Hidalgo County, Texas. Defendants, Genaro Rodriguez and wife, Petra Duarte Rodriguez, reconvened and prayed for a judgment for title and possession of the property as against plaintiffs.

Trial was to the court without a jury. Judgment was against plaintiffs upon their action and for defendants upon their plea of reconvention.

Plaintiffs bring the case here without express findings of fact and conclusions of law.

The common source of title was Juan Tamez and wife, Cruz B. de Tamez. On January 26, 1932, said parties conveyed the property involved to appellant Adela R. de Leyva, who was then the wife of Alberto Leyva. It is agreed that the property thereupon became the community property of Alberto Leyva and Adela R. de Leyva, although the name Alberto Leyva was not mentioned in the deed.

On April 1, 1940, Adela R. de Leyva executed a deed to Jacinto G. Hinojosa. The main controversy involved in this litigation has reference to the validity of this deed. The name of Alberto Leyva is not mentioned in the body of the deed. The granting clause recites "That, I, Adela R. de Leyva, * * * have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Jacinto G. Hinojosa * * *."

This instrument was signed by Adela R. de Leyva and immediately under her name appears the signature of Alberto Leyva. The privy acknowledgment of Adela R. de Leyva was taken by R. L. Yearwood, a Notary Public in and for Hidalgo County, Texas, on April 1, 1940. The certificate is in proper form and recites that Adela R. de Leyva is the wife of Alberto Leyva.

On the back of the instrument appears the following endorsement:

"Certifico: que el senor Alberto Leyva firmo al reverso de esta hoja, an mi presencia hoy veinticinco de febrero de mil novecientos cuarenta y uno en la H. Ciudad de Matamoros, Tamaulipas, Mexico, Doy fe. (I certify that Mr. Alberto Leyva signed on the reverse side of this sheet, and in my presence this 25th day of February, A. D., 1941, in the Heroic City of Matamoros, Tamaulipas, Mexico.)

(Signed) Lic Albino Hernandez, Jr.
Notario Publico, Num. 37."

On April 22, 1944, Jacinto Hinojosa and wife, Esperanza R. Hinojosa, conveyed the property to Antonio F. Vela, who in turn conveyed the same to appellees, on July 14, 1944.

On December 2, 1944, Alberto Leyva, having then been divorced from Adela R. de Leyva, executed a deed purporting to convey an undivided one-half interest in the property to Concepcion Leyva. This instrument contains the recitation that "This property is in litigation at this time and I convey to Concepcion all of my interest whatever it may be."

It appears that appellants Adela R. de Leyva and Esperanza R. Hinojosa are sisters. Concepcion Leyva was a niece of Adela R. de Leyva and had been reared by said Adela R. de Leyva and her husband, Alberto Leyva. At the time Adela R. de Leyva executed the deed to Jacinto Hinojosa (April 1, 1940), her husband was across the Rio Grande in Mexico. It seems that Alberto Leyva had been charged with the commission of an offense against the laws of the United States, and a permissible inference is that he was a fugitive from justice.

It also appears that Jacinto Hinojosa had been indicted along with some seventy-five other persons by a federal grand jury in the State of New York. However, an order of removal from the Southern District of Texas to the New York Federal District was refused because of insufficiency of the evidence against Hinojosa.

According to Adela R. de Leyva, Jacinto Hinojosa came to her several times and told her that her husband, Alberto Leyva, wanted her to join him in Mexico, but that she told him (Hinojosa) that "she did not have the money to go." Her version of the transaction which led to the execution of the deed was that Jacinto Hinojosa "came back to tell me the same thing, he came to ask me to go across the river where my husband was. I told him I could not, I did not want to leave the house * * * and then he made me a proposition." This proposition, according to the witness, was one whereby Hinojosa agreed to lease the property for nine months, at $20 per month, or a total of $180. She accepted this proposition and Hinojosa paid her $150 in cash and $30 owed by her to Hinojosa was credited against the $180 agreed consideration for the lease. She testified that she did not know she signed a deed, but thought that the written instrument executed by her was a nine months' lease.

Esperanza R. Hinojosa's version of the transaction was entirely different. She testified that Adela R. de Leyva agreed to convey the property to her husband, Jacinto Hinojosa, for a consideration of $600, and that Hinojosa agreed to pay up all delinquent taxes. She testified positively that the agreed consideration of $600 was paid over to Adela R. de Leyva by Jacinto Hinojosa in her presence.

Neither Jacinto Hinojosa nor Alberto Leyva testified upon the trial. Esperanza R. Hinojosa testified that she had not seen her husband for some time and understood that he had been drowned while fishing in the Gulf of Mexico. At the time of the trial, Adela R. de Leyva had secured a divorce from Alberto Leyva and she had heard that her former husband was around Blue Town, a settlement on the American bank of the Rio Grande near the boundary line of Hidalgo and Cameron Counties.

While the certificate of the Mexican Notary may not have been sufficient to entitle the deed to be recorded, insofar as Alberto Leyva is concerned, the original instrument was introduced in evidence and two witnesses shown to be familiar with Alberto Leyva's handwriting testified that his genuine signature was affixed to said deed.

Esperanza R. Hinojosa testified that her husband went to Matamoras, Mexico, to see Alberto Leyva and brought back the deed signed by Alberto Leyva and showed it to her.

Adela R. de Leyva, while insisting that the money received by her from Jacinto Hinojosa was for a nine months' lease, admitted that she did leave Hidalgo County, Texas, and joined her husband in Matamoras, and that she and her husband used the money received from Hinojosa to live on while in Mexico.

From the evidence above outlined, we are of the opinion that the trial judge could have properly arrived at the following fact conclusions, 3 Tex.Jur. 1065, § 750:

1. On April 1, 1940, Alberto Leyva was residing in Mexico apart from his wife, Adela R. de Leyva, because he had been charged with a criminal offense against the laws of the United States.

2. Alberto Leyva requested his wife to join him in Mexico.

3. Adela R. de Leyva wished to do so but did not have the necessary money therefor, and in order to obtain funds agreed to sell the property here involved to Jacinto Hinojosa for $600.

4. Jacinto Hinojosa paid Adela R. de Leyva $600 and received a deed to the property executed and acknowledged by her.

5. The money paid to Adela R. de Leyva was used for her transportation expenses to Matamoras where she joined her husband, and for living expenses of the couple while in Mexico.

6. Jacinto Hinojosa went to Matamoras and secured the signature of Alberto Leyva to the deed theretofore executed by his wife.

7. Jacinto Hinojosa intended to secure a ratification of the contract whereby Adela R. de Leyva had conveyed the property to him.

8. Alberto Leyva by signing his name to the deed intended to ratify such transaction.

From these fact findings we presume that the trial court concluded, as a matter of law, that title to the property passed from Alberto Leyva and Adela R. de Leyva to Jacinto Hinojosa, and that Adela R. de Leyva and Alberto Leyva's assignee (Concepcion Leyva) have no interest therein.

The controlling question upon this appeal is whether or not the conclusion of law above stated is supported by the fact findings above set out.

 In the well-considered case of Magnolia Petroleum Co. v. Still, Tex.Civ. App., 163 S.W.2d 268, 270, writ refused, the Texarkana Court of Civil Appeals said:

"The Constitution of Texas, Article 16, Section 15, Vernon's Ann. St., recognizes the power of the wife to own property, both separate and in common with her husband. Her right of property in her separate estate and in the community effects is that of real ownership, equal to that of the husband. Wright v. Hays' Adm'r., 10 Tex. 130, 60 Am.Dec. 200; 23 T.J. 101, 102, Secs. 80, 81. 'One of the most valuable incidents of the right of property is the power of disposing of it; and it is held that the power, in the absence of statutory restrictions, ordinarily accompanies the right. Where the law permits the wife to take and hold property in her own right, it is generally held that she can transfer it as a feme sole, unless restrained by legislative enactments.' Ballard v. Carmichael, 83 Tex. 355, 364, 18 S.W. 734, 737. So, legislative enactment is not necessary to confer upon the wife power to convey. She possesses that power independent of the statutes, as an incident to her constitutional right of ownership, the same as the husband.

"In the interest of what is deemed beneficial to the connubial partnership, certain statutory restrictions have been placed upon the right of a wife to exercise the power of conveyance, as to her separate property, R.S. Article 4614, Vernon's Ann.Civ.St., Art. 4614, and as to that held in common with her husband, R.S. Article 4619, and upon both the husband and wife as to the homestead whether it consists of the separate property of either or the community property of both. R.S. Article 4618. The statutes do not destroy the wife's title or ownership, they merely restrain or suspend the right to exercise her power to convey. Such statutory restraint upon the right to exercise the power to convey is itself a recognition of the existence of such power, in the wife as well as in the husband."

The restriction upon the wife's authority to convey community property is set forth in Article 4619, Vernon's Ann.Civ. Stats., which contains the proviso that community property "may be disposed of by the husband only."

This statutory wording was first construed by the Supreme Court in Thomas, Adm'r v. Chance, 1854, 11 Tex. 634, opinion by Chief Justice Hemphill.

In this case it appears that Lucy Ferris, the wife of Edward Ferris, without her husband's joinder, conveyed community real property to Lewis Goddard and received certain purchase money notes therefor. Part of the Goddard notes were transferred to John C. Dodds in exchange for three negroes. Thomas, Dodd's administrator, sought to rescind the exchange agreement and recover title to the negroes.

The Supreme Court said:

"One of the grounds on which the plaintiff claims a rescission of the sale of the negroes, is, that the deed of the land from Lucy Ferris to Goddard was absolutely null and conveyed no title. The law declares that the community property may be disposed of by the husband only. A critical examination of the phraseology might lead to the conclusion, that the provision meant nothing more than to give the husband power to dispose of the property without joinder by the wife, and that although she had an equal interest with him in the property, yet that her assent to its alienation should not be necessary to its validity. But, admitting that the clause vests exclusive power of disposition in the husband, how then stand the rights of the intestate of the plaintiff, on the facts set forth in the record.

"There is no doubt, on the supposition of exclusive right in the husband, that a deed by the wife, of community property, the husband being present and acting as the head of the community, cannot stand alone. The deed from Lucy Ferris to Goddard, considered as her own act, without the assent or authority of the husband, express or implied, would not convey title. But although it may be the exclusive right of the husband, as the acting partner, to control and dispose of the common property, yet he may, expressly or by implication, invest his wife with all the authority possessed by himself over the community. She is joint owner and has an equal interest with himself, in the property; and her acts (with his assent and authority) in relation to such property, must have equal force with his own. This authority may be given previously to the act or subsequently, either expressly or by implication. In this case, from the plaintiff's allegations, it appears that the contract of sale of the negroes was in fact made with the husband, Edward Ferris, but in the name of the wife, Lucy, and that the negroes were in fact delivered to the husband; that these were the consideration for the sale of the land by Lucy Ferris to Goddard; that Goddard's notes for the land were paid by these negroes; that the wife was rather a nominal than a real party in the transaction, the consideration having been paid to, and received by the husband. If such be the facts in relation to the transactions—and their truth cannot be disputed by the plaintiff—is not the husband, by his acts, effectually estopped from claiming the property as his own or as belonging to the community, and subject to his further control or disposition? By his receipt of the purchase money, he has ratified the sale; and it could never be disputed by him or his heirs. She, at least, is under no disability, and by his acts he must be bound. By these he has imparted equities to the vendee which will effectually shield his title from any claim of right set up by himself or those claiming under him."

This case clearly holds that when a deed to community property is executed by the wife, a member of the community, the assent of the husband may be shown by parol. If it be shown by evidence outside the deed itself that the husband either authorized or ratified the act of the wife the conveyance will be upheld.

We find no case by the Supreme Court which expressly or impliedly overrules Thomas v. Chance.

In Berry v. Wright, 14 Tex. 270, the Supreme Court, commenting upon Thomas v. Chance, said: "Nor is there any ground for the supposition that the charge of the court, considered in reference to the facts in evidence, was not conformable to the doctrines and opinion maintained by this court in the case of Thomas v. Chance (11 Tex. 634). In that case it was said 'the deed from Lucy Ferris to Goddard, considered merely as her own act, without the assent or authority of her husband, express or implied, would not convey title.' (Id. 637.) And that is this case as here presented by the evidence. There was no evidence of the assent of the husband, express or implied, to the making of the deed by Mrs. Ferris to Goddard. And hence there was no occasion for the application of the doctrine justly maintained in the case of Thomas v. Chance as to the effect of such assent on the part of the husband. It is scarcely necessary to say that every case must be tried upon its own facts as given in evidence upon the trial, and that the charge of the court is to be taken and understood in its application to the evidence, and not in reference to a different state of facts proved in another case."

In Fox v. Brady, 1 Tex.Civ.App. 590, 20 S.W. 1024, 1025, the Court said: "It seems to have been held at an early day in this state that, where the title to community property is in the wife, she might, by the consent of her husband, dispose of it without his formally joining her in the conveyance. Thomas v. Chance, 11 Tex. 634; Berry v. Wright, 14 Tex. [270], 274."

In Couch v. Schwalbe, 51 Tex.Civ.App. 94, 111 S.W. 1046, 1048, the wife executed a conveyance of her part of the community estate. The husband signed his name to the deed but was not mentioned in the body of the deed as a grantor. This conveyance was upheld. The court said: "It seems to

us that this question has been settled in this state against the view of appellee by the earlier decisions of the Supreme Court. In Thomas v. Chance, 11 Tex. 637, where the present statutes declaring that community property may be disposed of by the husband only were first construed, it was contended that a deed by the wife alone was an absolute nullity and conveyed no title. In that case the wife alone conveyed the property, the husband not joining in it; but it was shown by parol testimony that he consented and acquiesced, thereby authorizing it. * * * The rule laid down in this case has been reaffirmed in Fox v. Brady, 1 Tex.Civ.App. [590], 593, 20 S.W. 1024. Also, in Roos v. Basham, 41 Tex.Civ.App. 551, 91 S.W. 656. In the last case the wife alone executed the deed, and an issue was made as to whether she did so with the husband's authority; the court finding as a fact that the husband had authorized her to make said deed. The judge, in delivering the opinion of the court, said: 'If, then, the wife, with the authority and assent of her husband, can make a valid conveyance of the community real estate, we need inquire no further, for the judgment must be affirmed. The exact point has been decided in this state'— citing Thomas v. Chance, supra. In Wetzel v. Simon, 87 Tex. [403], 404, 28 S.W. 274, 942, where a deed of assignment of the community property was made by the wife under the direction of the husband, it was held to pass title to the property. Judge Gaines, in delivering the opinion of the court, upon this question said: 'The trial court found that the effects which purported to be transferred belonged to the community estate of N. Wise and his wife. The debts were created in carrying on the business, and were the debts of the husband as representing the community, and not the debts of the wife. * * * Such being the case, we are of the opinion that when the husband directed the wife to sign the conveyance in her own name, and when, in pursuance of such direction, she did so execute it, it passed the title of the property with the same effect as if he had signed it himself in his own name and delivered it with his own hands.' It will be observed that in each of the cases above cited the name of the husband did not appear in the body of the deed, nor did he sign the same, but his assent to the execution of the deed in each instance was established by parol, and the conveyances were upheld as sufficient to pass title. If the wife, by her own deed, can convey community property so as to pass title thereto where her husband does not join in the deed, but his assent thereto is shown by evidence aliunde the deed, then for a greater reason, it would seem, that where the husband joins in the deed, as in the case at bar, by signing and acknowledging the same, the title would certainly pass."

In Hanks v. Leslie, Tex.Civ.App., 159 S.W. 1056, 1057, it was said that "It is well settled that a deed to land, the community property of the two spouses, executed by the wife alone, but with the assent of the husband, will convey title. Thomas v. Chance, 11 Tex. 634, * * *."

Appellants primarily rely upon Stone v. Sledge, 87 Tex. 49, 26 S.W. 1068, 1069, 47 Am.St.Rep. 65, and Savage v. Rhea, Tex.Com.App., 33 S.W.2d 429, 431.

In Stone v. Sledge it was held that a deed signed and acknowledged by the wife and joined by her husband was insufficient to convey lands belonging to the wife's separate estate, for the reason that the wife's name did not appear in the body of the conveyance. This case relates to the statutory requirements of a valid conveyance of the wife's separate property, a matter which is primarily governed by Article 4614, Vernon's Ann.Civ.Stats.

In Savage v. Rhea the Commission of Appeals said:

"It is contended by plaintiffs in error that the conveyance to Matilda Ohler from Zacherie vested title in the community estate of Matilda and her husband, and not in her separate estate, there being nothing in the record to show the contrary (Kin Kaid v. Lee, 54 Tex.Civ.App. 622, 119 S. W. 342), and therefore, the husband having executed such deed by an attorney in fact, the conveyance carried good title into Headen. * * *

"No power of attorney from Edward Ohler to his wife was shown, but, if we assume that, after lapse of years, its execu-

**710**

tion will be presumed (Garner v. Lasker, 71 Tex. [431], 435, 9 S.W. 332: Huling v. Moore, Tex.Civ.App., 194 S.W. 188), the deed is nevertheless inoperative because he is not named as a grantor in the body of the deed which purports to be wholly the act of another, viz.: Matilda Ohler. It must appear from the body of the conveyance itself that Edward Ohler is a grantor therein. Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am.St.Rep. 65; Creosoted Wood Block Paving Co. v. McKay, Tex. Civ.App., 211 S.W. 822; Jackson v. Craigen, Tex.Civ.App., 167 S.W. 1101."

It is apparent that in Savage v. Rhea the Commission of Appeals considered only the narrow question of the validity of the deed as a conveyance in writing *by the husband,* and held that as he was not mentioned in the body of the conveyance, he was not a party grantor thereto. We can not assume that the Supreme Court, by rendering the judgment recommended by the Commission *of Appeals, intended to overrule Thomas v. Chance,* and the line of cases following the rule therein set forth by Chief Justice Hemphill. We think Savage v. Rhea is distinguishable from Thomas v. Chance.

■ If the evidence in this case consisted of the deed in which Alberto Leyva's name does not appear in the body of the instrument and *nothing more,* the rule stated in Savage v. Rhea might have application; but here the appellees do not rely upon the deed alone, but upon additional circumstances which indicate that the wife's conveyance of the property was made with the assent of the husband and that her action was ratified by him. It was shown that the husband derived a benefit from and made use of the consideration received for the wife's conveyance. After the conveyance had been made, the husband affixed his signature to the deed. This is certainly evidence of his ratification of the wife's prior action. It is not in accordance with equitable principles to allow a husband to repudiate the wife's deed under such circumstances, and unless there be some statutory requirement that the assent or ratification by the husband of the wife's action on behalf of the community be evidenced in a particular way

by a prescribed instrument in writing, the wife's deed should be accorded validity.

There is an expression in Lasater v. Jamison, Tex.Civ.App., 203 S.W. 1151, 1154, to the effect that a wife's deed to community property "could only be ratified by an act (on the part of the husband) having the essential elements of a conveyance." This statement was probably not necessary to a decision of the case. The authorities cited in support thereof (Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552 and Holland v. Votaw, 62 Tex.Civ.App. 91, 130 S.W. 882) relate to conveyances of the wife's separate property. The Supreme Court case of Thomas v. Chance, as above pointed out, holds that the husband's authorization or ratification of the wife's deed to community property may be shown by parol. As that case has never been overruled by the Supreme Court, the rule therein stated is binding upon this Court and we accordingly hold that under the facts of this case the deed involved was a valid conveyance, binding upon both Adela R. de Leyva and Alberto Leyva.

The judgment of the trial court is affirmed.